MOORE ET AL v. ANTILL.

1. **Tenants in Common**: OUSTER: STATUTE OF LIMITATIONS. Where
the holder of a quit-claim deed to unoccupied prairie land, from one of
two tenants in common of the tract, took possession of the land and
improved and used the same, it was held that such acts were not an
assertion of title to the whole tract, such as would constitute an ouster
of his co-tenant and support the plea of the statute of limitations to an
action by the heirs of such co-tenant to recover his share.

*Appeal from Adams District Court.*

TUESDAY, JUNE 8.

ACTION in equity to quiet title to an undivided interest in
eighty acres of land. There was a decree for the plaintiffs.
Defendant appeals. The facts appear in the opinion.

*W. O. Mitchell*, for appellant.

*Davis, Wells & Russell*, for appellees.

ROTHROCK, J.—I. Abraham Moore died in 1863 intestate.
He was unmarried and without issue, and at the time of his
death owned the land in controversy. His father,
Andrew Moore, and his mother, whose maiden
name was Mary Meyers, were married in Ohio,
and separated before or about the time of the birth of their
son Abraham. Some years after their separation Andrew
Moore married Maria McCracken, and Mary Moore, the
mother of Abraham, married one Finly, by whom she had
several children. Finly died, and Mary married Simon
McVicker, with whom she lived at the time of Abraham's
death. Andrew Moore and Maria McCracken lived together
as husband and wife until his death, which occurred in 1870.
He died intestate, and left, as the issue of his marriage or
cohabitation with Maria McCracken, two children, named
Amanda M. Moore and Jane I. Royce. These two children

were brought up in the family of Andrew Moore, and were always recognized and treated by him as though born in lawful wedlock, and one of them continued to live in his family as a daughter until the time of his death.

Abraham Moore, the deceased, acquired the property in controversy without the assistance of his parents. He enlisted in the United States military service in 1861, and was killed in action at Ringgold, Georgia, in November, 1863. It is apparent that at the death of Abraham Moore his father and mother inherited the property of their deceased son, each taking one-half. The plaintiffs in this action are Maria Moore and the two children, Amanda M. Moore and Jane I. Royce. By their petition they claimed the one-half of the land. The court below held that Maria Moore was not entitled to any interest therein, but that the said children were each entitled to one-sixth thereof. Plaintiffs are content with the decree, but defendant, who holds by conveyance from the mother of Abraham Moore, insists that it is erroneous, upon grounds which we will proceed to examine.

In the first place it is proper to say that the effect of the decree in the court below is to hold that the two children who are plaintiffs inherited from their father the same as though they were born in lawful wedlock. We do not understand that counsel for appellant questions their right to inherit, in view of their recognition by their father. The effect of the decree is, further, to invest the defendant, who is the grantee of the mother of decedent, with one-third of the one-half which was inherited by the father.

It is contended, however, that the plaintiffs can recover no interest whatever by reason of the statute of limitations. The evidence shows that Mary McVicker and her husband, Simon McVicker, by a deed dated February 24, 1868, quit-claimed all their right, title and interest in the land in controversy to John Antill, the defendant; that the defendant entered upon the land, which was prairie, in May, 1868, and broke up about sixty acres; that in the spring of 1869 he enclosed the same

and planted a crop thereon. This action was commenced September 30, 1878. The deed under which the defendant took possession of the premises did not purport to convey the whole premises. It released and quit-claimed only the interest of the grantors, whatever that might be. It was not such an assertion of title to the whole premises that possession under it would be an ouster or dissiezin of the other tenant in common, the father of Abraham Moore. The possession taken to break the prairie was not adverse as against the other tenant in common. It was not a distinct assertion of a right to the exclusion of the co-tenant. If it be claimed that the appropriation of the crops amounted to an ouster, such appropriation had not continued for ten years before action was brought. The first crop raised was in 1869, and this action was commenced in 1878. We are clearly of the opinion that the possession taken under the quit-claim deed did not operate to set the statute of limitations in motion. See *Burns v. Byrne*, 45 Iowa, 285; *Kinney v. Slattery*, 51 Iowa, 353; and *Hume v. Long*, *ante*, 299.

A few days before Abraham Moore enlisted in the army he left in the hands of one Ramsey a few lines written and signed by himself, in which he directed that all his property, in case of his death, should go to his mother. This writing had no witnesses to it, and it does not appear that it was authenticated in any way, except by the signature. It was handed by Ramsey to one Crawford, who sent it to the mother of deceased, who then resided in Indiana. This writing was lost. It is not claimed that it was an informal will, but that, though informal and ineffectual to pass the title, it was sufficient to make color of title, and thus support the plea of the statute of limitations. But it does not appear from the acts of the defendant that he relied on this writing as the source of his title. On the other hand, it clearly appears that at the time he took the quit-claim deed he was advised that if Andrew Moore was living, or if he had heirs who inherited from him, they were tenants in common to the extent of their

interests in the land, and it was not claimed, and the defendant did not purchase the land in reliance upon any last will and testament of Abraham Moore.

It further appears that the defendant, after his purchase, allowed the taxes to become delinquent and the land to be sold and title taken in another, who conveyed to defendant with a view to perfect his title. As we understand it, where a party relies upon color of title, in support of the statute of. limitations, he must rely upon his color of title and hold possession under it.

This disposition of the case renders it unnecessary to dispose of the motion filed by appellees to strike out certain parts of the record in the cause.

AFFIRMED.