EDWARD H. LITCHFIELD, Appellant, v. ALEXANDER SEWELL AND ELIZABETH SEWELL.

| 97 | 247 |
| ,102 | 157 |
| 103 | 261 |
| 97 | 247 |
| 114 | 334 |
| 97 | 247 |
| d116 | 69 |
| 97 | 247 |
| 118 | 110 |
| 97 | 247 |
| 122 | 313 |
| d122 | 315 |
| 97 | 247 |
| 124 | 733 |
| 97 | 247 |
| d129 | 36 |
| 97 | 247 |
| e142 | 235 |

**Adverse Possession.** Defendant received a quit claim deed to the land in suit, from an occupant whom he knew to have no title, under the belief that it was government land, and that, on termination of the litigation between plaintiff's grantor and the government, he would be able to secure title thereto. Defendant did not pay taxes on the land, record his deed, or claim title thereunder, until the litigation was decided in favor of plaintiff's grantor. *Held,* that defendant's possession prior thereto, was not adverse.

STATUTE OF LIMITATION: *Compromise.* An offer, by an occupant of land, which he is holding adversely, to purchase it from the owner, within the statutory period of limitation, not made to settle any real or threatened litigation, is a recognition of the owner's title, and will interrupt the running of the statute.

*Appeal from Webster District Court.*—HON. D. R. HINDMAN, Judge.

THURSDAY, FEBRUARY 6, 1896.

SUIT in equity to quiet the title to certain lands, which were included in what is known as the "Des Moines River Land Grant." The defendants pleaded the statute of limitations, and claim title by adverse possession. They also interposed a counterclaim, asking that the title be quieted in them. The plaintiff denied the adverse possession, and pleaded that defendants' possession had at all times been with open recognition of plaintiff's title and ownership. The

cause was tried to the court, and a decree was rendered, quieting the title to one forty acres in dispute, in plaintiff, and the other in defendants. Plaintiff appeals.—*Reversed.*

*Gatch, Connor & Weaver* for appellant.

*R. M. Wright* for appellees.

Deemer, J. It is practically conceded that plaintiff is the owner of the patent, or paper, title to the land in controversy, by virtue of certain mesne conveyances from the United States government through the Des Moines Navigation & Railroad Company, and that he is entitled to a decree quieting his title unless the defendants have established a title thereto through adverse possession; and the only question for our determination is, whether defendants have established their defense as to one forty acres of land, known as the "North 40." There is no question that defendants had been in possession of this land for more than ten years prior to the commencement of this suit, and that their possession was actual, open, and notorious. It is argued on behalf of appellant, however, that their possession was not adverse, for that it was neither under color of title nor claim of right, and that, if they had color of title to occupy the land as of right, they, upon two occasions, during the last ten years, disclaimed ownership to plaintiff's representatives, and without reservation offered to purchase the land, and openly recognized plaintiff's title. The evidence shows that defendant received a quitclaim deed for the "forty" in dispute, from one G. Y. Boyd, in June, 1880, the consideration being a mare and twenty-five dollars in money. At the time defendant purchased the land, there were some improvements upon the land, which had been erected by Boyd

at an expense of more than eighty dollars.  Boyd says he went upon the land, supposing it was government land, and that he transferred his interest in the land to Sewell, "as it might appear," and that the deed was drawn up in that way.  Boyd says he claimed the land under the head of a homestead, and that he expected to get his title from the government.  Sewell did not record his deed, and has never paid any taxes on the land.  He says that he understood the land was in litigation when purchased from Boyd, and that he thought the government would get it, and then he would get title.  When Boyd sold to Sewell, he explained to him that he thought it was government land, and that it was in litigation, and that he expected, in the end, to get title from the government, as he believed the settlers would win; and he transferred to Sewell, he (Boyd) says, the improvements, and Boyd's chance to get title to the land from the government.  Thus matters stood until the decision of the Supreme Court of the United States in January, 1892, confirming the title in the land company.  It then became apparent that Sewell could not get title from the government, and he wrote to an attorney with reference to his rights in the land, and was advised that he could hold the land by virtue of his possession under the deed from Boyd.  He then claimed the land under the Boyd deed.  Before this time Sewell did not claim to own the land, but expected to stay on it as long as he could, and to get a title to it from the government, if it was successful in its litigation with the land company.  Sewell did not disclose to any one the fact that he had a deed from Boyd, until after the decision of the Supreme Court of the United States, and frequently, and to many persons, disclaimed having any interest in the land, other than as a squatter, until he heard from the attorney to whom he wrote sometime early in the

year 1892. In the year 1889, Sewell tried to purchase the land from the representatives of the appellant. He offered, at one time, eight hundred dollars for the eighty acres, and one thousand dollars at another. This last amount was near, if not quite, the value of the land at the time the offer was made. Litchfield did not wish to sell the land at these prices, however, and the offers were refused.

We have stated our conclusions, from the evidence, rather than the testimony, from which they are derived, as the ultimate facts only are material to a proper determination of the case; and we turn now to the law, which should be applied to these facts. It may be stated, as a general rule, "that the law is stringent in requiring strict proof of the facts, requisite to constitute adverse possession. Among these is the material and essential one, that the occupancy must have been with the intention to claim title. In other words, the fact of the possession, and the *quo animo*, with which it was commenced, and continued, are the true and only tests; and, as showing this intent, it is clearly competent to show, by the declarations of the occupant, that he did not hold adversely. *McNamee v. Moreland*, 26 Iowa, 96. We have seen that Sewell, when he took the deed from Boyd, knew that Boyd had no title; that he thought the land was government land, and expected to get title from the government. Now, while it is true, that a void deed, or one given without right or title, by the grantor, or even a tax deed, void on its face, may be sufficient to give color of title, yet, such a rule has no application to one who actually knows that he has no claim, or title, or right to a title. Adverse possession must be in good faith. *Jones v. Hockman*, 12 Iowa, 101; *Close v. Samm*, 27 Iowa, 503; *Smith v. Young*, 89 Iowa, 338 (56 N. W. Rep. 506); *Snell v. Mechan*, 80 Iowa, 53 (45 N. W. Rep. 398). It seems to

be well settled, that there can be no such thing as adverse possession, where the party knows he has no title, and that, under the law, he can acquire none by his occupation. *Deffenback v. Hawke*, 115 U. S. 1392 (6 Sup. Ct. Rep. 95). Moreover, it appears to us, that Sewell did not rely upon the Boyd deed, as giving him title, until after the decision of the Supreme Court of the United States. He, as we think, expected the government to be successful in its litigation with the land company, and then expected to get the title from the government. That such was his position, with reference to the south forty, cannot be doubted; and, in view of the testimony, showing that he knew Boyd was a squatter, and had nothing to convey, unless the government was successful in its litigation with the land company, and the fact that Sewell was making no claim under his deed, but was attempting to purchase the land from Litchfield, we think he stood in the same position with reference to the land in dispute.

We have heretofore announced that doctrine, that, "where a party relies upon color of title in support of the statute of limitations, he must rely upon his color of title, and hold possession under it." *Moore v. Antill*, 53 Iowa, 612 (6 N. W. Rep. 14). The whole doctrine of adverse possession rests upon the presumed acquiescence of the party against whom it is held. 3 Washburn Real Property (3d Ed.), page 123. If, then, the intention is wanting of claiming against the true owner, the possession will not be adverse, nor, however long continued, bar the owner's right of entry. *Jones v. Hockman, supra; Wright v. Keithler*, 7 Iowa, 92. The evidence shows that Sewell did not record his deed, did not pay any taxes upon the land, and did not claim title under his deed, until after the decision of the Supreme Court of the United

States. As he made no claim of title under the Boyd deed, but expected to procure the land from the government, after a decision in its favor, there was no occasion for plaintiff to assert his rights. ·He did not, by delay, acquiesce in any hostile claim, made by appellee. Whenever the matter was spoken of by Sewell, to any agent or representative of Litchfield, prior to the year 1892, he stated that he expected to get his title from the government, after the litigation between the government and the land company was ended. He did not disclose his deed to these agents until after the decree was rendered for the land company, and then declared that he did not intend to claim under the deed until he was informed by an attorney, to whom he wrote, that he could get title by prescription. Manifestly, there was, under such a state of facts, no such acquiescence, by the owner, as will prevent him from asserting his title. Any other holding would unjustly deprive plaintiff, who has been guilty of no wrong, or laches, of the title to his land, and confer it upon one whose claim thereto, under the Boyd deed, was but for a few months prior to the institution of this suit.

But, aside from all this, it clearly appears from the testimony that, prior to the year 1892, and some time in the year 1889, the defendant offered to purchase the land in dispute from Litchfield. He first offered to pay eight hundred dollars for it, and afterwards increased the offer to one thousand dollars, and said he was willing to pay what the land was worth. He also stated that he would sell his improvements for actual cost, and give up the land, if he could not buy. It is true that Sewell makes equivocal denial of these offers, and his counsel insists that, even if made, they are not binding, and should not be considered, because they were given in an effort to buy his peace, or to settle the difficulties between the

parties.   We are satisfied that these offers were made
to an agent of the appellant, and that they should not
be excluded because of being made to settle any real
or threatened litigation, and that they constituted a
recognition of appellant's title.   When these offers
were made, Sewell, as we have said, was not claiming
in hostility to Litchfield, except as he might get title
from the government, if the government was success-
ful in its litigation.   He made no assertion of right
under the Boyd deed, and was not negotiating for a
settlement of any controversy between himself and the
appellant.   It seems to be well settled that an offer by
defendant to purchase the property, which he is hold-
ing adversely, from the plaintiff, within the statutory
time, is a clear recognition of plaintiff's title, and will
interrupt the running of the statute.   *Davenport v.
Sebring,* 52 Iowa, 364 (3 N. W. Rep. 403); *Jackson v.
Britton,* 4 Wend. 507; *Jackson v. Croy,* 12 Johns, 427;
*Lovell v. Frost,* 44 Cal. 471; Wood, Lim. Act., section
270; and cases cited in 1 Am. & Eng. Enc. Law, para-
graph 272.

Our conclusion is that the defendant does not
hold title to the land by prescription, and that the
decree should have been for plaintiff, as to the "north,"
as well as to the "south" forty.   The cases of *McCamy
v. Higdon,* 50 Ga. 629, and *Saxton v. Hunt,* 20 N. J.
Law, 487, as well as those heretofore cited, are in sup-
port of the doctrines announced in this opinion.   We
are the better satisfied with the result in this case,
because it works no hardship to appellee.   He gave
but one hundred and seventy-five dollars for the land,
including   the   improvements,   which   were   worth
nearly as much as the consideration paid.   He has
had possession of the land since 1882, and has paid no
taxes thereon.   The improvements made by him have
been inexpensive, and up to this time he has paid no
rent.   It is, then, no injustice to apply to this case,

the rule first announced, requiring strict proof of the facts requisite to constitute adverse possession. Plaintiff should not be deprived of his land, under such circumstances, without full proof of all the facts essential to sustain the plea. We do not think such proof is furnished in this case, and the decree of the district court is REVERSED.