Lee M. **MITCHELL** and Margaret V. **Mitchell, Individually, and as Trustees of the Lee M. Mitchell Trust and the Margaret V. Mitchell Trust, Appellants,**

v.

Ronald L. **DANIELS, Appellee.**

No. 92–1050.

Court of Appeals of Iowa.

Oct. 28, 1993.

As Corrected Nov. 3, 1993.

James E. Brick of Brick, Gentry, Bowers, Swartz, Stoltze, Schuling & Levis, P.C., Des Moines, for appellants.

F. Richard Lyford and Barbara G. Barrett of Dickinson, Throckmorton, Parker, Mannheimer & Raife, P.C., Des Moines, for appellee.

Considered by OXBERGER, C.J., and HAYDEN and HABHAB, JJ.

HABHAB, Judge.

This appeal arises from a petition for adverse possession brought by plaintiffs, Lee and Margaret Mitchell, individually and as trustees, against defendant, Ronald Daniels. The plaintiffs claim title to ten feet of property by adverse possession. It is undisputed that legal title to the disputed ten feet is held by defendant.[1] The trial court, for the most part, held for the defendant. We affirm.

### I.

The plaintiffs and defendant own adjacent property in Des Moines. Running along the boundary of their properties is a ten-foot strip of land which both parties claim and which is the basis of this lawsuit. This ten-foot strip is located along the northern boundary of plaintiffs' property and the southern boundary of defendant's property. Plaintiffs claim they own this property by good faith claim of right and their continuous adverse possession of the property for more than ten years. The defendant Daniels counters by alleging the plaintiffs do not own the property by good faith claim of right and that plaintiffs' petition should be dismissed.

### II.

In 1948, both the Daniels and the Mitchells' property was owned by Polk County Mortgage Company. Guy B. Brunk was the president of this company. The company owned eighty acres fronting S.E. 14th Street. The company wanted to sell residential parcels.

Lee Mitchell, sometime in 1948, drove by the property and noticed a "For Sale" sign. The sign said there were five acres for sale. In October of that year, Mitchell and Howard Elliott (as buyers) entered into a real estate contract with the Polk County Mortgage Company (as sellers) for the purchase of a parcel of 300 feet by 600 feet. They did so with the understanding they would build residences on the parcel. They built homes, but used the remainder as an auto salvage yard.

On the day the real estate contract was signed, Mitchell returned to view the property. When he arrived, Brunk was at the site standing along the north fence. Brunk noted there was a discrepancy in the fence and legal description. He informed Mr. Mitchell the north fence was approximately ten feet north of the actual property line conveyed. Mitchell claims that Brunk then and there gave him the property up to the fence line. On direct examination, Mitchell testified Brunk stated since the fence was ten feet the wrong way, he (Brunk) was "just going to give it (disputed strip) to you."

---

1. During the course of the proceedings, Daniels sold his interest in the property to Southdale Limited. However, for purposes of this opinion, "Daniels" will be used to refer to both Daniels and Southdale Limited.

In 1951, Mitchell and Elliott received a warranty deed in satisfaction of their contract. During the trial, Mitchell conceded the ten feet was not in the warranty deed given when the real estate contract was paid. A review of the exhibits confirms this fact. The record also reveals that Mitchell did not request the conveyance of this ten-foot strip.[2] At the time the Mitchells and Elliotts were given the warranty deed, they divided the property between them. Elliott received 150 feet of the property along Kenyon and East 14th Street. Mitchell received 160 feet. Again, there was no mention of the ten-foot strip.

In 1967, Ronald Daniels' father, through Arlan Sales, Inc., purchased most of the balance of the parcel (approximately eighty acres) directly to the north of the Mitchells'. He purchased the property from the Brunk heirs. The deed from the Brunk heirs, who succeeded to the property through the corporation after the death of their father and mother, contained the disputed ten feet.

### III.

In 1991, Southdale Limited, successor to the title from the defendant, began excavation of its adjoining property for a strip mall. The Mitchells protested the encroachment upon the disputed land. When Daniels refused to recognize the Mitchells' claim, the Mitchells filed a petition in equity seeking to establish their right to the property by adverse possession.

The district court determined that the plaintiffs failed to establish their claim for they had failed to prove a good faith claim of right to the property. The court therefore quieted title to the property in the defendant's successor in interest, Southdale, Ltd. This appeal followed.

### IV.

■ In this equity action, our review is de novo. Iowa R.App.P. 4. We have a duty to examine the entire record and adjudicate anew rights on the issues properly presented. We give weight to the fact findings of the trial court, especially when considering the credibility of witnesses, but are not bound by them. Iowa R.App.P. 14(f)(7).

■ The doctrine of adverse possession is based on the ten year statute of limitations for recovery of real property in Iowa Code section 614.1(5) (1991). *See Carpenter v. Ruperto,* 315 N.W.2d 782, 784 (Iowa 1982).

■ A party claiming title by adverse possession must establish hostile, actual, open, exclusive and continuous possession, under claim of right or color of title for at least ten years. *C.H. Moore Trust Estate v. City of Storm Lake,* 423 N.W.2d 13, 15 (Iowa 1988). Proof of these elements must be "clear and positive." *Id.* (citing *Carpenter v. Ruperto,* 315 N.W.2d 782, 784 (Iowa 1982)). Since the law presumes possession is under regular title, the doctrine of adverse possession is strictly construed. *Id.*

### A. Hostile, Actual, Open, Exclusive and Continuous Possession.

■ From our de novo review of the evidence, both photographic evidence and direct testimony establish that the Mitchells used the disputed property in their automobile salvage business for in excess of ten years. Lee Mitchell testified that he stored cars and parts on the property, ever since moving onto the land in 1949. Photographs show the fence line, with cars, wheels, and tires stored on the Mitchells' side of the fence. We deem this sufficient to establish the Mitchells' use of the property.

### B. Claim of Right.

■ In addition to the elements of adverse possession set forth above, the Mitchells must show by clear and positive evidence that they had a claim of right or color of title. The Mitchells rely solely on a claim of right. We agree with the trial court that it is here where the plaintiffs have failed to carry their burden of proof.

■ The Iowa Supreme Court case of *Carpenter v. Ruperto,* 315 N.W.2d 782 (Iowa

---

**2.** In 1988, the Mitchells transferred their property to themselves as trustees of the Lee M. Mitchell Trust and the Margaret V. Mitchell Trust. Although not of great significance, the deed did not contain the property in dispute.

1982), casts considerable light on the subject. In that case, the supreme court reaffirmed the standing legal proposition that the claim of right must be asserted in good faith. *Ruperto,* 315 N.W.2d at 786. When knowledge of lack of title is accompanied by knowledge of no basis for claiming an interest in property, a good faith claim of right cannot be established. *Id.* at 785. For example, a mere squatter or one who claims under a squatter cannot have a good faith claim of right to property. *Id.*

Justice McCormick, speaking for the majority in *Ruperto,* stated further:

> The overbreadth of the statement that title cannot be obtained through adverse possession by one who knows he has no title is demonstrated in *Litchfield* [*v. Sewell,* 97 Iowa 247, 66 N.W. 104 (1896) ], *Goulding* [*v. Shonquist,* 159 Iowa 647, 141 N.W. 24 (1913) ] and subsequent decisions. In *Litchfield* the court rejected the adverse possession claim of a person in possession of land under a quitclaim deed from a squatter. In finding an absence of good faith, the court noted the adverse possession doctrine "has no application to one who actually knows that he has no claim, or title, or right to a title." 97 Iowa at 250, 66 N.W. at 106. Under this holding a mere squatter or one who claims under a squatter cannot have a good faith claim of right to the property, but mere knowledge by the person that he has no title is not preclusive. A claim of right by a squatter is a false claim. To permit a squatter to assert a claim of right would put a premium on dishonesty. *See* 4 H. Tiffany, *Real Property* § 1147 at 792 (3d ed. 1975). One of the main purposes of the claim of right requirement is "to bar mere squatters from the benefits of adverse possession." 7 R. Powell, *Real Property* ¶ 1015 (Rohan ed. 1981).

As in *Litchfield,* the possessor in *Goulding* not only knew that he had no title but that he had no claim of title or any right to enter into possession of the property. He was a mere squatter.

Knowledge of a defect in title is not alone sufficient to preclude proof of good faith:

> One is not deprived of the benefit of the statute of limitations merely because his claim of right is unenforceable or his title is known to be defective. The doctrine of adverse possession presupposes a defective title. It is not based on, but is hostile to, the true title. If the statute were to run only in favor of a valid title, it would serve no purpose. The holder of such a title has no need to invoke the statute. Where bad faith is held to negative an alleged claim of right, it is only another way of saying that such claim has been disproved.

*Creel v. Hammans,* 234 Iowa 532, 535, 13 N.W.2d 305, 307 (1944).

Nevertheless, when knowledge of lack of title is accompanied by knowledge of no basis for claiming an interest in the property, a good faith claim of right cannot be established.

*Id.*

■ We agree with the trial court that the plaintiffs have failed to prove their claim by "clear and positive proof." The plaintiffs at all times had full and complete knowledge of their lack of title to the disputed land. The plaintiffs claim they have a basis for claiming an interest in the property for the property was orally gifted them.[3] But, again, the proof in this respect does not rise to the level of "clear and positive" for when the deed was delivered in satisfaction of the contract, the disputed property was not mentioned. It is equally clear from the testimony of Tim Roby, a former tenant of the Mitchells, that the Mitchells were aware that the legal description of their property did not extend to the fence. Although the Mitchells have never paid property taxes on the disputed property, we agree with the Mitchells that payment of taxes is not essential to a successful claim of adverse possession. *See I–80 Assocs., Inc. v. Chicago, R.I. & Pac. R.R.,* 224 N.W.2d 8, 10 (Iowa 1974).

---

**3.** "An oral agreement is a sufficient basis for a claim of right as adverse possessor." *Burch v.*

*Wickliff,* 209 Iowa 582, 588, 227 N.W. 133, 135 (1929).

## V.

The Mitchells also assert that they established ownership of the disputed property by Iowa Code section 650.14 (1991), acquiesced boundaries. Daniels asserts the Mitchells' boundary by acquiescence claim must be deemed waived because it was not raised until the Mitchells presented their proposed decision to the district court. We need not reach the issue whether this claim was properly pled for we determine Mitchells have failed to prove this claim.

**AFFIRMED.**

DONIELSON, J., takes no part.