# IN THE COURT OF APPEALS OF IOWA

No. 15-0142
Filed September 23, 2015

**SABRE MAYHUGH,**
        Plaintiff-Appellant,

**vs.**

**ESTHER M. DEA, in her Capacity as Trustee of Richard W. Dea Revocable Trust, ESTHER M. DEA, in her capacity as Trustee of Esther M. Dea Trust, THOMAS PATTEE and KATHLEEN PATTEE, husband and wife, and ESTHER M. DEA, in her individual Capacity,**
        Defendants-Appellees.
_____

        Appeal from the Iowa District Court for Shelby County, Jeffrey L. Larson,

Judge.

        Landowner Sabre Mayhugh appeals the district court's denial of his

petition to show ownership of property by acquiescence or adverse possession.

**AFFIRMED.**

        Patrick B. Griffin of Kutak Rock, LLP, Omaha, Nebraska, for appellant.

        Robert M. Livingston and Kristopher K. Madsen of Stuart Tinley Law Firm,

LLP, Council Bluffs, and Matthew J. Hudson of Hall Hudson, P.C., Harlan, for

appellees.

        Considered by Doyle, P.J., and Mullins and Bower, JJ.

**DOYLE, Presiding Judge.**

Sabre Mayhugh claims a fence on his neighbor's property has served as an actual boundary rather than just a barrier for livestock. He appeals the district court's ruling denying his claim to the property through acquiescence or adverse possession. Because Mayhugh does not meet the standards necessary to prove ownership under either doctrine, we affirm.

## I.    Background and Proceedings

This dispute involves a thin strip of land that divides the parties' properties.[1] The salient facts are set forth succinctly in the district court's order as follows:

> Mayhugh is the record owner of a 100 foot swath of land running north and east of the center line of a former railroad right-of-way in Shelby County (the "Mayhugh Portion of the Right-of-Way").[2] Sabre Mayhugh's ownership in the Mayhugh Portion of the Right-of-Way traces to a deed granted by the railroad to his Grandmother, Louise Mayhugh, in 1968.
> The Defendant, Richard W. Dea Trust, is record owner of a 100 foot swath of land on the other side of the tracks, running south and west of the center line of the former railroad right-of-way (the

---

[1] During the trial, the district court had the benefit of viewing a "demonstrative" prepared by a surveyor. The demonstrative was not marked or offered as an exhibit. It was a diagram that depicted an overview of the layout of the property in question, showing the former railroad right-of-way with the 100-foot swatches on either side of the centerline of the right–of-way. It also depicted the disputed properties. The demonstrative was referred to and marked on by witnesses during their testimony. The diagram, no doubt, depicted the dispute more clearly than mere words ever could. It was undoubtedly helpful to the trial court, but not to us, since it is not a part of the record before us. Reading testimony referencing the demonstrative without having the benefit of being able to view the demonstrative requires some imagination. Nevertheless, we have a clear understanding of the dispute through the testimony and exhibits received into evidence.

[2] The legal description states, in part, "A strip of land 100 feet wide, being the Northeasterly half of abandoned right-of-way of Chicago, Rock Island and Pacific Railroad."

"Dea Trust Portion of the Right-of-Way").[3]   The Dea Trust's ownership in this portion of the Right-of-Way traces to 1993, when Shelby County deeded the swath of land to Richard W. Dea individually.  Mr. Dea transferred his interest in the Dea Portion of the Right-of-Way to the Dea Trust in 1998.

Sabre Mayhugh owns the land to the north and east of, and appurtenant to, the Mayhugh Portion of the Right-of-Way.  Sabre Mayhugh took over the farming operations on this land in 1994.  Saber Mayhugh primarily grows crops on his property; however, his grandfather used to move cattle and sheep through the property.  The Dea Trust owns the land to the south and west of the Dea Trust Portion of the Right-of-Way.  Defendant Tom Pattee has farmed this land on a cash rent basis since 1980.  Pattee has predominately used the land for grazing cattle.

The railroad right-of-way runs roughly from the northwest to the southeast.  The center line of the railroad right-of-way is elevated.  The descending slopes of the right-of-way are wooded.  The elevated center line of the right-of-way runs across a trestle, built of hewn stone, which spans a small creek.

Within the Dea Trust Portion of the Right-of-Way runs a fence roughly parallel to the railroad line (the "Original Fence").[4]  The Original Fence was in place for almost 50 years until July of 2012 when Pattee removed the fence and constructed a new fence closer to the center line of the railroad right-of-way.[5]  Mayhugh

---

[3] The legal description states, in part, "All that part of the abandoned right-of-way of the Chicago, Rock Island and Pacific Railroad Company . . . being a strip of land 100 feet wide Southeasterly of the center line of said former abandoned railroad right-of-way."

[4] It appears, from our reading of the record, that because the railroad ties were still in place when the original fence was constructed, it would have been impractical to place a fence on the property line, i.e., on the centerline of the railroad right-of-way over the ties.  The ties had been long removed and were no longer an impediment when Pattee built the new fence in 2012.

[5] Pattee testified that because the 50-year old fence was deteriorating, it needed to be replaced.  Because of erosion from the creek into the original fence line, he stated "there was no feasible way to rebuild the fence [on the original fence line], so I decided to rebuild the fence on the property line."  Furthermore, when asked why he did not build the fence right down the middle of the train trestle, Pattee responded:

Because I knew that [Mayhugh] used from the—what I call the stone arch.  It's been called the trestle, here south to get to approximately 25 to 30 acres that he farms to move machinery back and forth across that.  So basically from just about the stone arch or trestle to the south, I moved the fence as far as we feasibly could to the right-hand side so that he could still get to the property and use the property.

Pattee said he put the new fence closer on his property, rather than on the actual property line, "to be a good neighbor so that [Mayhugh] could get through to his ground."  Mayhugh testified he used the railroad right-of-way to access one of his fields, and the trestle was critical to his access.  In accessing his field he stated he drove over "a lot of the portion of the disputed property."  Mayhugh acknowledged that south and east of the

objected to Pattee placing the fence near the recorded property line and seeks to quiet title in him that part of the Dea Trust Portion of the Right-of-way, from the center line of the railroad right-of-way to the line of the Original Fence (the "Disputed Property") is his by acquiescence and adverse possession.

In January 2013, Mayhugh filed a petition, later amended, requesting the court to quiet title in his favor in the Disputed Property, via either the doctrine of acquiescence or adverse possession. Trial on the matter was held in November 2014. In December 2014, the district court entered an order which concluded Mayhugh failed to show he obtained title to the Disputed Property through acquiescence or adverse possession. The court ordered the Disputed Property remain with the Richard W. Dea Trust. Mayhugh now appeals.

## II.     Scope and Standards of Review

"Generally, we will hear a case on appeal in the same manner in which it was tried in the district court." *Johnson v. Kaster*, 637 N.W.2d 174, 177 (Iowa 2001). The action does have an equity designation and was tried in equity, and the parties assert our review is de novo. *See* Iowa R. App. P. 6.907. We agree the adverse possession claim is reviewed de novo, but we review the acquiescence claim for correction of errors at law.

## III.    Discussion

*Acquiescence.* Iowa Code section 650.14 (2011) provides: "If it is found that the boundaries and corners alleged to have been recognized and acquiesced in for ten years have been so recognized and acquiesced in, such

---

trestle the fence was placed to the west of the center line "[t]o try to be a little bit of accommodative to the equipment that I use. . . . but it still—it makes it very difficult to drive, and it forces me to drive a little bit more to the east, and it causes additional wear on the railroad right-of-way."

recognized boundaries and corners shall be permanently established." The term

"acquiescence" is defined as

> the mutual recognition by two adjoining landowners for ten years or more that a line, definitely marked by fence or in some manner, is the dividing line between them. Acquiescence exists when both parties acknowledge and treat the line as the boundary. When the acquiescence persists for ten years the line becomes the true boundary even though a survey may show otherwise and even though neither party intended to claim more than called for by his deed.

*Egli v. Troy*, 602 N.W.2d 329, 332 (Iowa 1999).

"An action under Iowa Code chapter 650 to establish a boundary is considered on appeal as an ordinary action." *Id.*; *see* Iowa Code §§ 650.4, 650.15. Accordingly, our review is on assigned errors. *Tewes v. Pine Lane Farms, Inc.*, 522 N.W.2d 801, 804 (Iowa 1994). We engage in a limited review; the district court's findings are the equivalent of a jury's verdict. *See id.* If supported by substantial evidence, the court's ruling should not be disturbed on appeal. *See id.* As an appellate court, "it is not our province to solve disputed factual questions nor pass on the credibility of witnesses." *Concannon v. Blackman*, 6 N.W.2d 116, 118 (Iowa 1942). "Stated in other words, in a law action tried to the court its findings of fact having adequate evidentiary support shall not be set aside unless induced by an erroneous view of law." *Davis v. Hansen*, 224 N.W.2d 4, 5 (Iowa 1974).

The burden is upon the party claiming a boundary line different from that disclosed by a survey to establish acquiescence by clear proof. *See Brown v. McDaniel*, 156 N.W.2d 349, 351 (Iowa 1968). Acquiescence may be inferred by the silence or inaction of one party who knows of the boundary line claimed by

the other and fails to dispute it for a ten-year period. *Tewes*, 522 N.W.2d at 806. "Acquiescence in the existence of a fence as a barrier, not as a boundary, is not such recognition as will establish it as the true line." *Brown v. McDaniel*, 156 N.W.2d 349, 352 (Iowa 1968).

A synopsis of relevant evidence was set forth by the district court as follows:

> Mayhugh testified that his grandfather had used the Disputed Property to run cattle from the time he obtained the land until he passed away in 1989. Further, Mayhugh stated that his father and grandfather occasionally trimmed back trees and brush to retain the use of the railroad bed for the movement of farming equipment between the fields they farmed, and they actively ran-off hunters and other trespassers from the Disputed Property.
>
> Mayhugh took over the farming operations in 1994, after the death of his Grandfather in 1989, and the death of his Grandmother in 1994. Mayhugh testified that since taking over the farming operation he has continued to move farm equipment along the railroad right-of-way across the trestle, in part on Disputed Property, to access some of his farm land. He stated that he moves equipment over the trestle approximately three to five times each year. Mayhugh further testified that he: cuts trees and brush in the Disputed Property; posts "no trespassing or hunting" signs in the property; occasionally runs cattle through the Disputed Property; walks in portions of the property; and grants permission to third parties to use the Disputed Property for hunting. . . .
>
> Pattee testified at trial that he never considered the Original Fence the property line, and that he occasionally went into the Disputed Property to spray and remove invasive weeds. Further, Pattee stated that he and his family used the property for picnics and his family has taken pictures in the Property. Finally, Pattee stated that he had seen "no trespassing" signs posted in the Disputed Property, but whenever he saw one he would remove the sign and move it to Mayhugh's property.

From this evidence the district court concluded:

> In the case at hand, the Court finds that Mayhugh has failed to provide clear proof that both parties were aware that the asserted property line was treated as a boundary. To begin, at trial, Mayhugh provided evidence that his grandfather used the disputed property and helped maintain the Original Fence in the years that

he farmed the land. Although this may be true, a prima facie case of acquiescence requires the "mutual recognition by *two adjoining landowners* . . . that a line . . . is the dividing line between them." [*Sille v.*] *Shaffer*, 297 N.W.2d [379,] 381 [(Iowa 1980)] (emphasis added). In the years that the grandfather farmed the land, Shelby County was the record owner of the Disputed Property, and thus, was the adjoining landowner. Mayhugh failed to include Shelby County as a party to the case. Further, Mayhugh provided no evidence at trial that Shelby County recognized the Original Fence as the dividing line between the properties. Therefore, because Mayhugh did not provide clear proof that Shelby County recognized the Original Fence as the dividing line, the Court will only consider the evidence relating to the parties' activity on the Disputed Property after the Defendants purchased the property from Shelby County in 1993.

After evaluating the evidence relating to the period the parties were "adjoining landowners," the Court finds that Mayhugh has failed to provide clear proof that both parties recognized the fence as a boundary line and not merely a barrier for cattle. The evidence shows that at times Mayhugh allowed cattle to pass through his land, and that Pattee primarily used his farmland for grazing cattle. Pattee testified that he has always maintained the fence in order to keep his cattle on his land, and that he has never seen Mayhugh repair the fence in the past thirty years. Finally, Pattee testified that despite the fact he performed all of the work repairing the Original Fence, he never billed Mayhugh for the maintenance costs because he viewed the fence as his own, and not as a boundary between the properties.

The Court finds Pattee's testimony credible. His testimony is consistent with the fact that the Defendants received title to the Disputed Property from Shelby County in 1993. It would be unusual for the Defendants to purchase the property beyond the Original Fence from Shelby County, and then promptly acquiesce to the Original Fence as the boundary between their property and Mayhugh's property. This fact corroborates Pattee's statement that he never recognized the Original Fence as the boundary between the properties.

For these reasons, the Court finds that Pattee used the Original Fence merely as a barrier to keep his cattle out of Mayhugh's property and not as a boundary between the properties. Accordingly, the Court finds that Mayhugh has failed to provide clear proof that the parties mutually recognized the Original Fence as the dividing line between the properties. Therefore, Mayhugh has failed to show he obtained title to the Disputed Property through acquiescence.

We agree.

*Adverse Possession.* To establish ownership by adverse possession, Mayhugh must prove hostile, actual, open, exclusive, and continuous possession under a claim of right or color to title, for at least ten years. *See Burgess v. Leverett & Assocs.*, 105 N.W.2d 703, 705 (Iowa 1960). The doctrine of adverse possession is strictly construed because the law presumes possession is under regular title. *Mitchell v. Daniels*, 509 N.W.2d 497, 499 (Iowa Ct. App.1993).

Adverse possession is an action to quiet title and is heard in equity, so generally our review is de novo. *See Barks v. White*, 365 N.W.2d 640, 643 (Iowa Ct. App. 1985). "In a de novo review, the appellate court examines the facts as well as the law and decides the issues anew." *Brede v. Koop*, 706 N.W.2d 824, 826 (Iowa 2005). In doing so, we give weight to the district court's findings of fact, especially concerning credibility of witnesses, but are not bound by them. *See* Iowa R. App. P. 6.904(3)(*g*).

The burden is on the plaintiff to show all the elements of adverse possession by clear and positive proof. *See Carpenter v. Ruperto*, 315 N.W.2d 782, 784 (Iowa 1982). "Mere proof of use . . . is therefore not sufficient to establish a plaintiff's claim." *Simonsen v. Todd*, 154 N.W.2d 730, 736 (Iowa 1967). Although "mere use" is insufficient to establish hostility or claim of right, certain acts, including substantial maintenance and improvement of the land, can support a claim of ownership and hostility to the true owner. *See Johnson*, 637 N.W.2d at 179; *Simonsen,* 154 N.W.2d at 733.

A claim of right is evidenced by taking and maintaining property, such as an owner of that type of property would, to the exclusion of the true owner; in other words, the plaintiff's conduct must clearly indicate ownership. *See I-80*

*Assocs., Inc. v. Chicago, Rock Island, & Pacific R.R. Co.*, 224 N.W.2d 8, 11 (Iowa 1974). Acts of ownership include occupying, maintaining, and improving land. *See Lynch v. Lynch*, 34 N.W.2d 485, 490-91 (Iowa 1948). It also may be evidenced by giving a deed in transferring the property or paying real estate taxes. *See Burgess*, 105 N.W.2d at 706.

In regard to the adverse possession claim, the district court concluded:

> Pattee testified that the Dea family Trust has always paid the property taxes for the Disputed Property. Mayhugh has never paid taxes for the property, nor has he offered to pay them. This fact indicates that Mayhugh did not believe the land was his, and therefore, he did not possess the land with a "good faith claim of right or color of title." *See Goulding* [*v. Shonquist*], 141 N.W. [24,] 25 [(Iowa 1913)].
>
> What is more, there is a lack of evidence that Mayhugh's possession was "open and hostile." . . . The only evidence Mayhugh presented that he actually possessed the Disputed Property were the facts that he occasionally removed brush from the land, he posted some "no hunting signs" in the Disputed Property, and multiple times each year he drove farm equipment along the property line and his equipment often crossed the property line into the Disputed Property. The Court finds that this activity resembles, at most, mere permissive use of the land. Pattee removed the "no hunting" signs from the Disputed Property and he acted neighborly by allowing Mayhugh to drive farm equipment on his property. In light of the presumption in favor of the legal title holder, the Court finds that this evidence falls short of providing clear and positive proof of "open and hostile" possession of the Disputed Property.
>
> Finally, the evidence at trial showed that Mayhugh's use of the land was not "exclusive." At trial, Pattee testified that he sometimes went into the Disputed Property to spray invasive weeds and remove brush. Further, he and his family sometimes had picnics in the property. Therefore, Mayhugh has failed to provide clear and positive proof of exclusive possession of the Disputed Property. For these reasons, the Court finds that Mayhugh has failed in his proof to sustain his claim of adverse possession.

Once again, we agree.

*IV.*    *Conclusion*

Employing the applicable standards of review, we conclude Mayhugh failed to meet his burden of proof to establish he obtained title to the Disputed Property through the doctrine of acquiescence.  Furthermore, Mayhugh failed to meet his burden of proof to sustain his claim of adverse possession.  We therefore affirm the ruling of the district court.

**AFFIRMED.**