COUNCIL BLUFFS SAVINGS BANK, Executor of the Estate of G. William Coulthard, Appellee,

v.

Clifford L. SIMMONS and Helen H. Simmons, Appellants.

No. 55882.

Supreme Court of Iowa.

June 30, 1976.

Rehearing Denied July 26, 1976.

Truman Clare, Omaha, Neb., for appellants.

Murray & Altwegg, Logan, for appellee.

Heard before MOORE, C. J., and Le-GRAND, UHLENHOPP, REYNOLDSON and McCORMICK, JJ.

LeGRAND, Justice.

This is still another case involving disputed land title because of the vagaries of the Missouri River. The trial court quieted title in plaintiff, and we affirm.

■ Our review is de novo. *Grosvenor v. Olson*, 199 N.W.2d 50, 51 (Iowa 1972). Defendant Clifford L. Simmons died during the pendency of this appeal. Helen H. Simmons is now the sole party defendant. Our references to plaintiff are to G. William Coulthard, who is also now deceased, rather than to the executor of his estate.

I. Plaintiff claims title to 1,060 acres of land located in Harrison County approximately two miles upstream from Blair Bridge between Missouri Valley, Iowa, and Blair, Nebraska. This area of the Missouri River was originally known as the California Bend. Since relocation of the channel by the United States Corps of Engineers, it has been called the California Cut-Off. In dispute are only 20 to 25 acres located in Lot 5, Section 12, Township 78 North, Range 46 West of the 5th P.M.

According to an 1858 governmental survey, the Missouri River was then running in a channel west of and contiguous to Lot 5. By 1879, Lot 5 had been washed away by the Missouri River and lay entirely within the river itself. According to Stewart A. Smith, a surveyor called as a witness by both plaintiff and defendant, it had lost its identity as land.

■ Smith testified unequivocally that by 1930 any land existing where Lot 5 had formerly been was accretion land on the Nebraska side of the river. Sovereignty over such accretion land then vested in the state of Nebraska, and ownership vested in the owner of the riparian land to which it had accreted. *State of Nebraska v. State of Iowa*, 143 U.S. 359, 12 S.Ct. 396, 36 L.Ed. 186, 187–188 (1892); *Mather v. State*, 200 N.W.2d 498, 500 (Iowa 1972).

In 1938 and 1939 the Corps of Engineers dredged a new channel at California Bend. This is the channel now known as the California Cut-Off. In 1943, Iowa and Nebraska entered into a boundary compact under the terms of which the center line of the channel became the boundary between the two states. Under the compact, the disputed land came under the sovereignty and jurisdiction of the state of Iowa. *See* Iowa-Nebraska Boundary Compact, page lxxii, The Code, 1975.

II. Plaintiff claims title to the real estate under three separate theories. They are:

1. The land accreted to other land conveyed to him in 1959 by deed from Chicago & Northwestern Railway Company;

2. The land was conveyed to him by quit claim deed from Ralph Mencke; and

3. He has title to the land by adverse possession.

III. Defendant, on the other hand, lays claim to the land on two grounds:

1. It was conveyed to her in 1954 by quit claim deed from Harrison County; and

2. She has title by adverse possession.

IV. The decisive question is which of these claimants has established title by adverse possession. Although other grounds are stated by both, we believe the parties

must stand or fall on the strength of their conflicting adverse possession claims.

To establish title by adverse possession, one must prove open, exclusive, continuous, actual and hostile possession under claim of right or color of title for at least 10 years. *I–80 Assoc.'s, Inc. v. Chicago, R.I. & Pac. R. Co.*, 224 N.W.2d 8, 10 (Iowa 1974); *Grosvenor v. Olson, supra*, 199 N.W.2d at 51; *Moffitt v. Future Assur. Assoc.'s, Inc.*, 258 Iowa 1160, 1170–1172, 140 N.W.2d 108, 114 (supplemental opinion at 141 N.W.2d 776 (1966)); *Lawse v. Glaha*, 253 Iowa 1040, 1046, 114 N.W.2d 900, 903–904 (1962); *Lynch v. Lynch*, 239 Iowa 1245, 1254–1255, 34 N.W.2d 485, 490 (1948).

Color of title and claim of right are alternatives and "either will suffice." *See I–80 Assoc.'s, Inc. v. Chicago, R.I. & Pac. R. Co., supra*, 224 N.W.2d at 10. As we discuss later, both plaintiff and defendant meet the "claim of right or color of title" requirement. However, only plaintiff proved the other necessary element—open, exclusive, continuous, actual and hostile possession for at least ten years.

It is here that plaintiff succeeds and defendant fails.

V. We review first the evidence which convinces us plaintiff must prevail.

As already mentioned, plaintiff's case is based on possession under a claim of right. Concerning this matter, we quote from 3 Am.Jur.2d, Adverse Possession, § 101, at 184–185 (1962):

> "It is not necessary to establish a claim of right * * * by an express declaration * * *; it is sufficient if * * * [claimant] has acted so as to clearly indicate he did claim title. * * * [It] need not be based on writing. * * * The actual occupation, use, and improvement of the premises by the claimant, as if he were in fact the owner thereof without payment of rent or recognition of title in another or disavowal of title in himself, will be sufficient to raise a presumption of his entry and holding as absolute owner and, unless rebutted, will establish the fact of a claim of right."

In the case now before us, plaintiff acted in a manner clearly asserting he claimed title. He cleared and improved the property. He used it without interruption as part of his farming operation. His conduct is consistent only with a claim of ownership. We believe this is shown by the following review of the evidence.

Beginning in 1938, one Maurice Cleaver leased land owned by the Chicago & Northwestern Railway Company. The Chicago & Northwestern Railway Company did not own, nor did the lease cover, the disputed land, which then lay across the river in Nebraska. Although the dredging of the California Cut-Off in 1939 changed the location of this land, it was still separated from the leased land by a swale. In 1952, the action of the river had filled the swale and the land was then accessible to Cleaver. He began using it as part of his pasture land in that year and continued to do so through 1958, when he lost his lease because in 1959 the railroad company sold the leased land to plaintiff. During all this time, defendant, who had purchased land to the north of that leased by Cleaver, made no claim to the disputed tract in any manner.

In 1959, plaintiff and Delmar Chandler formed a partnership to work the land plaintiff had purchased from the railway company. This arrangement was still in effect at the time of trial in 1969. During this period, they continuously used the disputed tract for pasture land.

The land plaintiff purchased from the Chicago & Northwestern Railway Company was timberland, with willows, brush and large cottonwood trees growing wild. So was the adjacent disputed tract. Plaintiff cleared much of the land, including that now in dispute. Defendant Clifford L. Simmons, a bulldozer operator, participated in clearing land adjacent to the disputed tract, although it does not appear that he actually cleared the disputed land for plaintiff. By 1963, all timber and brush had been cleared from the area. During this four-year period while plaintiff was clearing and improving the property, defendant registered no

protest against plaintiff's use of the land which defendant now claims.

We find the present case quite similar to *Moffitt v. Future Assur. Assoc.'s, Inc.,* supra, 258 Iowa at 1160, 140 N.W.2d at 108. There, as here, the property plaintiff claimed was not included in the conveyance by which he took title to adjoining land. There, as here, the other claimant held a quit claim deed from the county. There, as here, plaintiff and his predecessor had cleared, improved and farmed the land.

In finding for plaintiff in *Moffitt* we said:

" 'It is enough if the person pleading the statute takes and maintains such possession and exercises such open dominion as ordinarily marks the conduct of owners in general in holding, managing, and caring for property of like nature and condition.'

" * * *

"Claim of right is distinct from claim 'under color of title.' We have said that claim of right or 'hostile claim' need not be under color of title. This is the general rule as respects land actually occupied.

* * * * * *

"The making of improvements on disputed * * * land * * * were acts characteristic of an owner rather than those of a mere licensee who owns adjoining property * * * and indicate occupancy under claim of right essential to adverse possession." (258 Iowa at 1171–1172, 140 N.W.2d at 114).

*See also Grosvenor v. Olson,* supra, 199 N.W.2d at 51.

■ We hold from a review of all the evidence that plaintiff has proven his title by clear and convincing proof of adverse possession. Plaintiff's possession had spanned 15 years—1952 to 1967—at the time suit was started. In computing this period, we count Cleaver's possession from 1952 to 1958 as inuring to plaintiff's benefit. *See Moffitt v. Future Assur. Assoc.'s, Inc.,* supra, 258 Iowa at 1171, 140 N.W.2d at 114.

Having concluded plaintiff established title by adverse possession, we do not consider the other two bases upon which he relies and upon which the trial court also found in his favor.

VI. While the result reached in Division V necessarily means we find against defendant, we discuss the bases on which defendant claims the land.

Defendant first asserts title by virtue of a quit claim deed from Harrison County executed in 1954. Harrison County had purportedly acquired title by virtue of a tax deed from the county treasurer in 1938 for unpaid taxes from 1925 through 1934.

The trial court found the deed from the treasurer to the county was a nullity because during the years for which taxes were allegedly unpaid the real estate was located in Nebraska and was not subject to taxation in this state. Consequently, the deed from the county to defendants in 1954 conveyed no interest in the property. The record overwhelmingly supports this view, and we find against defendant on the claim of title based upon this deed.

We have held, however, that such a deed, if taken in good faith, even though conveying no title, may form the necessary color of title to support a later claim of adverse possession. *Grosvenor v. Olson,* supra, 199 N.W.2d at 52 and citations. However, this rule affords defendant no support because there is no proof of possession of the kind nor for the period necessary to establish adverse possession rights.

Defendant and her husband testified they were in possession of the land from and after 1953. Helen H. Simmons said that, beginning in 1955 and continuing down to the time of trial, either she or members of her family went to the disputed tract at least twice yearly and posted signs reading "No trespassing—property of C. L. Simmons." This testimony was disputed by a score of witnesses. Like the trial court, we reject it.

Clifford L. Simmons also testified Cleaver's use of the property from 1952 to 1958 was with his permission. If so, of course, the use would never ripen into title by adverse possession. However, Simmons

was unable to say when or under what circumstances this "permission" was given. Cleaver denied any such conversation. Simmons related, too, a conversation with Chandler in which he asserted ownership to the tract. Chandler denied such a conversation. A review of the evidence leads us to the conclusion no such conversations took place.

Defendant further claims the Chicago & Northwestern Railway Company and plaintiff both acknowledged her ownership of the disputed tract. The former is said to have done so by a pleading in a separate quiet title action brought by the railway company against Simmons. The trial court found, and we agree, that this amounted to no more than an allegation Simmons claimed title.

As to plaintiff's alleged concession of defendant's title, the evidence shows he negotiated with defendant in 1964 for the sale of land. If the sale had been completed, defendant was to have released any claim to the real estate now in dispute. We do not regard these negotiations as an admission defendant owned the real estate. Plaintiff simply sought to buy his peace to avoid litigation. See 5 Thompson on Real Estate, § 2552, page 574 (1957); 3 Am.Jur.2d, Adverse Possession, § 85, page 169 (1962); see also Annot. 125 A.L.R. 825.

We find the evidence does not support defendant on any of these factual matters relied on to defeat plaintiff's claim.

We find, too, defendant laid no claim to this land until 1967, when the evidence shows it was first posted. This was shortly before this quiet title suit. It appears that posting precipitated this suit.

There is not a shred of evidence to support defendant's claim of possession except the testimony of Mr. and Mrs. Simmons, and there is a wealth of evidence to refute them.

We find defendant has failed to produce any credible evidence to show open, exclusive, continuous, actual and hostile possession for at least ten years or, in fact, for any period.

In connection with this matter, defendant asserts plaintiff is barred from prevailing because of the provisions of § 614.22, The Code. For present purposes the 1962 Code is applicable. It provides:

"No action shall be maintained to set aside, cancel, annul, declare void or invalid, or to redeem from any tax deed, * * which shall have been recorded in the office of the recorder of the county * * prior to January 1, 1950, unless such action shall be commenced prior to January 1, 1963, and if no action to set aside, cancel, annul, declare void or invalid, or to redeem from any such deed shall be commenced prior to January 1, 1963, then such deed and all proceedings upon which the same is based shall be conclusively presumed to have been in all things valid and unimpeachable and effective to convey title according to the purport thereof, without exception * * *, *provided that this * * * shall not apply to any real property described in any such deed which is not on July 4, 1961, in the possession of those claiming title under such deed.*" (Emphasis supplied.)

Since we have already found defendant was not in possession of the land on July 4, 1961, this statute does not bar plaintiff's claim.

■ We have not overlooked the fact defendant has paid taxes on the land since 1954. While payment of taxes is a circumstance to be considered, it alone cannot establish title by adverse possession. In the present case, the payment of taxes by defendant, unaccompanied by other indicia of adverse possession, is insufficient to defeat plaintiff's claim. *Moffitt v. Future Assur. Assoc.'s, Inc., supra,* 258 Iowa at 1172, 140 N.W.2d at 113; *cf. Grosvenor v. Olson, supra,* 199 N.W.2d at 52.

VII. For the reasons heretofore stated, the judgment is affirmed.

AFFIRMED.