**IN THE COURT OF APPEALS OF IOWA**

No. 15-0172
Filed March 9, 2016

**GREGORY S. KOETHER,**
**d/b/a KOETHER RANCH, L.L.C.,**
 Plaintiffs-Appellees,

**vs.**

**GWENDOLYN ELLIOTT,**
 Defendant-Appellant.
_____

 Appeal from the Iowa District Court for Clayton County, John J. Bauercamper, Judge.

 Gwendolyn Elliott appeals the district court's ruling quieting title to land in favor of Gregory Koether by way of adverse possession. **REVERSED AND REMANDED.**

 Elisabeth S. Reynoldson of Reynoldson & Van Werden, L.L.P., Osceola, and Richard L. Wilson of Richard L. Wilson, P.C., Lenox, for appellant.

 Matthew W. Boleyn of Reynolds & Kenline, L.L.P., Dubuque, for appellees.

 Heard by Vaitheswaran, P.J., and Doyle and Mullins, JJ.

**MULLINS, Judge.**

Gwendolyn Elliott appeals the district court's ruling quieting title to land in favor of Gregory Koether by way of adverse possession. We reverse and remand.

## I.      Background Facts and Proceedings

Gwendolyn and Gregory are siblings, the only children of Eddie and Eleanore Koether. Eddie died in 2000,[1] and Eleanore died in January 2004.[2] Prior to the deaths of Eddie and Eleanore, Gregory farmed with his father and utilized the outbuildings located on Lot 17, the land in dispute, in the joint farming operation.

Gwendolyn and Gregory served as co-executors of Eleanore's estate. On August 1, 2006, Eleanore's estate conveyed Lot 17 to Gwendolyn in fee simple absolute by way of a court officer's deed signed by both Gwendolyn and Gregory as co-executors. Gwendolyn recorded the deed on September 18, 2006. At the

---

[1] Under Eddie's will, title to all properties owned by Eddie passed to his wife, Eleanore.
[2] Eleanore's will was executed on December 19, 2003, and provided in pertinent part:
**ARTICLE THREE**
　　　　1.　　　I give all of my pasture and tillable farm land to Gregory S. Koether and Kathleen K. Koether.
　　　　2.　　　I give all of my forest/timber land to be divided equally between Gwendolyn J. Elliott and Gregory S. Koether.
　　　　3.　　　I give Gregory S. Koether the rental house legally described as follows:
　　　　　　Southwest Quarter of the Northeast Quarter in Section 26,
　　　　　　Township 95 North of Range 4, Clayton County, Iowa.
　　　　　　　I give Gwendolyn Elliott the family house legally described as follows:
　　　　　　Lot Seventeen (17), Block Two (2), in the Village of Giard,
　　　　　　Clayton County Iowa.
　　　　　　The property will be conveyed to each party set forth above subject to the parties sharing a roadway/driveway easement and sharing the well jointly. The easement for the driveway and well shall be perpetual. The parties shall share equally any maintenance or repair costs for the well and for the driveway.

time of the conveyance, Gwendolyn and Kathleen Koether, Gregory's ex-wife, knew Lot 17 included the outbuildings but did not know its exact boundaries. Gregory testified at trial that he believed he was only conveying the family house to Gwendolyn when he signed the court officer's deed. On March 23, 2012, Gwendolyn had the lot surveyed and subsequently evicted Gregory.

On October 22, 2013, Gregory filed a petition in equity to quiet title to Lot 17, excluding the family house, which he conceded belonged to Gwendolyn. On September 24, 2014, the district court held a trial in the matter. On December 9, 2014, the district court granted Gregory's petition to quiet title to "all of the pasture and tillable farm land located" on Lot 17 and determined Gwendolyn to be the owner of the family house located there. The district court did not address the ownership of the outbuildings located on Lot 17 in its written ruling. On December 22, 2014, Gwendolyn filed a motion to enlarge, amend, or modify the court's findings of fact and conclusions of law pursuant to rule 1.904(2), requesting that the district court modify its ruling and find that Gregory did not hold any portion of Lot 17 adversely to Gwendolyn. The district court subsequently denied the motion. Gwendolyn appeals.

## II. Scope and Standard of Review

Our review of this quiet title action, a matter tried in equity, is de novo. Iowa R. App. P. 6.907; *Garrett v. Huster*, 684 N.W.2d 250, 253 (Iowa 2004). We have the responsibility to examine the facts as well as the law and decide anew the issues properly preserved. *Johnson v. Kaster*, 637 N.W.2d 174, 178 (Iowa 2001). We give weight to the district court's fact findings, especially when

considering the credibility of witnesses, but we are not bound by them. Iowa R. App. P. 6.904(3)(g).

### III. Analysis

A party invoking the adverse possession doctrine "must establish hostile, actual, open, exclusive and continuous possession, under claim of right or color of title for at least ten years." *C.H. Moore Trust Estate v. City of Storm Lake*, 423 N.W.2d 13, 15 (Iowa 1988). "Proof of these elements must be 'clear and positive.'" *Id.* (quoting *Carpenter v. Ruperto*, 315 N.W.2d 782, 784 (Iowa 1982)). Because the law presumes possession under regular title, the doctrine of adverse possession is strictly construed. *Id.*

Adverse possession may be established by either "color of title" or "claim of right." *Id.* at 16; *see also Council Bluffs Sav. Bank v. Simmons*, 243 N.W.2d 634, 636 (Iowa 1976). Color of title means "that which in appearance is title but in reality is no title." *Grosvenor v. Olson*, 199 N.W.2d 50, 52 (Iowa 1972). "To constitute color of title there must be a paper or record title of some kind . . . ." *Goulding v. Shonquist*, 141 N.W. 24, 25 (Iowa 1913). Gregory did not have color of title to Lot 17 because he did not have a deed to the land. We now turn to the element of claim of right.

Claim of right has often been used interchangeably with color of title. *Id.* Claim of right does not require a writing, *Council Bluffs Sav. Bank*, 243 N.W.2d at 636, but instead requires a person to use land "openly and notoriously, as owners of similar lands use their property, to the exclusion of the true owner." *I-80 Assocs., Inc. v. Chi., Rock Island & Pac. R.R. Co.*, 224 N.W.2d 8, 11 (Iowa 1974). Also encompassed within this element is a good-faith requirement.

*Carpenter*, 315 N.W.2d at 786. Good faith can be established by acts that clearly indicate the possessor claimed title:

> The actual occupation, use, and improvement of the premises by the claimant, as if he were in fact the owner thereof without payment of rent or recognition of title in another or disavowal of title in himself, will be sufficient to raise the presumption of his entry and holding as absolute owner and, unless rebutted, will establish the fact of a claim of right.

*Council Bluffs Sav. Bank*, 243 N.W.2d at 636 (citation omitted). However, ownership cannot be acquired by claim of right by one who knows he does not have good title. *See Carpenter*, 315 N.W.2d at 785. When knowledge of lack of title is accompanied by knowledge of no basis for claiming an interest in that property, a good-faith claim cannot be established. *Id.* at 785–86.

Gwendolyn claims Gregory failed to prove the elements of adverse possession because he did not have open, exclusive, continuous, actual and hostile possession of the land for a period of ten years. She contends Gregory's occupation of the outbuildings on Lot 17 ended in August 2012, when she served him notice that she was terminating his tenancy, and thus, any occupation of the land by Gregory had to have begun in August 2002 at the latest. Gwendolyn asserts, however, that Gregory made no claim of ownership to the land during the life of their parents, and that he actually acknowledged his use of the property was pursuant to an oral lease with their parents that ended when their mother died in 2004.

Gregory responds that he did assert a claim of ownership while their parents were living and has held all of the pasture and tillable farm land adversely to Gwendolyn and their parents. He contends he has owned the land

in question since the 1980s—when he started rotational grazing on the land for cattle, sheep, and goats—and cannot recall a discussion with either of their parents regarding his tenancy on the land. He further asserts his improvements to the land are proof of his claim of ownership because they show that he held the land openly and that his claim was hostile to their parents' ownership.[3]

Gregory testified at trial that he farmed with his father until his father's death in 2000. After Eddie's death, the property passed to Eleanore, and she owned the whole of Lot 17 until her death in January 2004. In his answers to interrogatories, Gregory stated that he utilized the outbuildings on Lot 17

---

[3] Gregory alternatively claims that if this court finds he did not establish the elements of adverse possession by clear and positive proof, he is entitled to the land under equitable principles. He asserts that pursuant to Eleanore's will, he was bequeathed all of the "pasture and tillable farm land," which includes portions of Lot 17, while Gwendolyn only received the family house, which is situated on Lot 17. He contends, "Essentially, the land in dispute was devised to [him] all along by way of Article Three, paragraph 1" of Eleanore's will, and "that intention was not appropriately carried out when the Court Officer's Deed [conveying Lot 17 to Gwendolyn] was executed." Thus, he argues, Gwendolyn will inequitably and unjustly benefit from the error of the deed's draftsman, as he has used and improved the land for over three decades while Gwendolyn has lived in Kansas. He claims neither he nor Gwendolyn signed the 2006 deed conveying Lot 17 to Gwendolyn "with a correct understanding as to what portion of land was actually being conveyed to the two of them." He asserts neither party intended for him to be excluded from the land at issue.
  Gwendolyn responds that Gregory did not plead his undefined claim for general relief at any time and the district court did not rule on it. *See Lamasters v. State*, 821 N.W.2d 856, 862 (Iowa 2012) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." (quoting *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002)). She further contends Gregory has failed to cite any authority in his brief to this court in support of his claim, and therefore, it must be waived. *See* Iowa R. App. P. 6.903(2)(g)(3) ("Failure to cite authority in support of an issue may be deemed waiver of that issue."). We determine Gregory's sole claim in this quiet title action was based upon a theory of adverse possession, and at no time prior to reaching this court did he move to amend his pleadings or otherwise plead in the alternative that he was entitled to the land under equitable principles. Because Gregory never pleaded other relief in this case and the district court did not rule on any such claim, the claim is not preserved for our review. *See Lamasters*, 821 N.W.2d at 862. Furthermore, Gregory has failed to cite any authority in support of his claim or arguments on appeal and has thus waived this issue. *See* Iowa R. App. P. 6.903(2)(g)(3).

pursuant to an oral lease with his parents while they were alive, but during testimony at trial, he claimed some ownership interest since he was a child.[4] Kathleen also testified Koether Ranch, L.L.C. utilized the outbuildings pursuant to a verbal agreement with Eddie and Eleanore. On our de novo review, we find Gregory's claim of ownership is not supported by clear and positive proof and conclude that because Gregory occupied the land with the permission and consent of his parents, he cannot claim his adverse possession of the land started before his mother's death in 2004. *See Council Bluffs Sav. Bank*, 243 N.W.2d at 636 (noting that when property is used with the permission of its owners, the use can never ripen into title by adverse possession). Accordingly, Gregory did not hold the property adversely to Gwendolyn for a sufficient period of time to obtain title by adverse possession.

Additionally, in 2006, Gwendolyn and Gregory, as co-executors of their mother's estate, deeded Lot 17 to Gwendolyn. Gwendolyn testified she knew Lot 17 extended into the barnyard and covered some of the outbuildings but did not know the extent of its boundaries until she had the survey conducted in 2012. Gregory acknowledged that when he and Kathleen formed Koether Ranch, L.L.C. in early 2005, they transferred all of their land into the L.L.C. but did not transfer Lot 17. Kathleen, as co-owner of Koether Ranch, L.L.C. and its registered agent, testified that Gregory did not list Lot 17 as an asset in their 2013 dissolution proceeding. Kathleen also stated she knew she and Gregory

---

[4] In his answers to interrogatories, Gregory stated his father was his landlord, the lease was oral with informal terms and conditions, and that he paid varied compensation for the lease. At trial, however, Gregory testified these statements were incorrect because he thought he had owned the South half of Lot 17, where the outbuildings are located, since he was a child.

did not own any interest in Lot 17 because of the deed Gregory and Gwendolyn signed in 2006. Kathleen stated she knew the 2006 deed conveyed more than just the family home to Gwendolyn because otherwise the easement granted in Eleanore's will requiring the parties to share a common driveway and a well would not have been necessary.

Finally, the record shows Gwendolyn has paid all property taxes for Lot 17 since it was conveyed to her in 2006. *See id.* at 638 (finding that whoever pays the property taxes in an adverse possession action "is a circumstance to be considered, [but] it alone cannot establish title by adverse possession"); *Meyers v. Canutt*, 46 N.W.2d 72, 76 (Iowa 1951) (noting "[p]ayment of taxes is evidence of good faith" by the person seeking adverse possession). Gwendolyn has also maintained liability insurance for the whole of Lot 17.

In 2012, Gwendolyn served Gregory with a notice to quit and a notice of termination of farm tenancy. Even if Gregory could establish he had occupied any portion of Lot 17 hostilely, actually, openly, exclusively, and continuously, he cannot establish that he has done so for the requisite ten-year period. Accordingly, we reverse and remand for entry of an order denying and dismissing Gregory's petition to quiet title to Lot 17.

**REVERSED AND REMANDED.**