Virginia CARPENTER, Appellant,

v.

Charles L. RUPERTO and Edith C. Ruperto, Husband and Wife, and Tom McCormick, Appellees.

No. 65679.

Supreme Court of Iowa.

Feb. 17, 1982.

John D. Hudson and Timothy R. Williams of Carney, Hudson, Williams & Green, Des Moines, for appellees.

Considered by UHLENHOPP, P. J., and McCORMICK, ALLBEE, LARSON, and SCHULTZ, JJ.

McCORMICK, Justice.

Plaintiff Virginia Carpenter appeals from an adverse decree in her action to quiet title to land adjacent to her residential premises based on a theory of adverse possession. Defendants Charles L. Ruperto, Edith C. Ruperto, and Tom McCormick cross-appeal from a portion of the decree awarding plaintiff limited relief on equitable grounds. We affirm on the merits of the appeal and dismiss the cross-appeal for want of jurisdiction.

The determinative question on the appeal is whether the trial court misinterpreted the law governing the claim of right element in finding plaintiff failed to carry her burden of proof. The determinative question on the cross-appeal is whether it was timely.

Because the case was tried in equity, we find the facts anew. The evidence is largely undisputed.

Plaintiff and her husband moved in 1951 to a home which they purchased in southeast Des Moines. Plaintiff's husband subsequently died, but plaintiff has lived on the premises continuously. Her lot has a frontage of 40 feet and is 125 feet long. It is legally described as:

Lot One Hundred Forty-Four (144) in Gray's Subdivision of Lots Fifty (50) and Sixty-Two (62) in BROOKS AND COMPANY, an Addition, now included in and forming a part of the City of Des Moines, Iowa.

A larger undeveloped lot bounded plaintiff's property to the north. It is described as:

The East 125 Feet of the North 474 Feet of Lot Sixty-Two (62) in BROOKS AND COMPANY'S ADDITION TO THE CITY OF DES MOINES, now included in and

James R. Bowers, Jr. and Keith E. Uhl of Scalise, Scism, Gentry, Brick & Brick, Des Moines, for appellant.

forming a part of the City of Des Moines, Iowa.

Defendants and their predecessors have held record title to this lot at all material times.

The property which plaintiff claims to have acquired by adverse possession is the south 60 feet of defendants' lot. Thus, the property in dispute is a 60 by 125 foot parcel adjacent to the north boundary of plaintiff's lot.

When plaintiff and her husband moved into their home in July 1951, the lot north of their property was a cornfield. Although plaintiff was not certain of the location of the northern boundary of her lot, she knew her lot's dimensions, and she knew it did not include the cornfield. In 1952 the corn was not planted as far south on the adjacent lot. Concerned about rats and the threat of fire, and desiring additional yard for their children, plaintiff and her husband cleared several feet of the property to the north, graded it, and planted grass seed on it. Since that time plaintiff has used the land as an extension of her yard. She planted peony bushes on it during the 1950's, installed a propane tank on it approximately 30 feet north of her lot in 1964, constructed a dirt bank on the city right of way to divert water from that parcel in 1965, and put in a driveway infringing five feet onto the land in 1975.

The remainder of defendants' lot was planted in corn until approximately 1957. The lot was owned by Abraham and Beverly Rosenfeld from July 1960 until February 1978. During that period the only use Rosenfelds made of the property was to store junk and debris on it. Except for the strip used by plaintiff, the lot was overgrown with brush and weeds. The Rosenfelds paid all taxes and special assessments on the property. Plaintiff and her husband at one time obtained the Rosenfelds' permission to keep a horse on the lot. On one occasion in the 1960's plaintiff examined the plat of defendants' lot in the courthouse to see if it ran all the way to a street to the north.

When defendant McCormick purchased his interest in the lot in 1978, he was aware of the possibility of a boundary dispute because of the location of plaintiff's propane tank and driveway. He and the other defendants were unsuccessful in their efforts to settle the dispute with plaintiff, who subsequently brought this action.

In seeking to establish her ownership of the disputed parcel, plaintiff alleged she had "for more than thirty (30) years last past been in open, exclusive, hostile, adverse and actual possession under claim of right." The trial court held in part that she did not establish her possession was under a claim of right. The court reasoned that a claim of right must be made in good faith and that plaintiff was not in good faith because she knew someone else had title to the land. Although the court found plaintiff had not proved her claim of adverse possession, it ordered defendants to "do equity" by deeding to her the strip of land her driveway was on and to pay the costs of moving the propane tank to her lot. The appeal and cross-appeal followed.

I. *The appeal.* The doctrine of adverse possession is based on the ten-year statute of limitations for recovery of real property in section 614.1(5), The Code. One claiming title by adverse possession must establish hostile, actual, open, exclusive and continuous possession, under a claim of right or color of title, for at least ten years, by clear and positive proof. Because the law presumes possession under regular title, the doctrine is strictly construed. These and other governing principles are explained in *I-80 Associates, Inc. v. Chicago, Rock Island and Pacific Railroad,* 224 N.W.2d 8, 10–11 (Iowa 1974).

As permitted, plaintiff relied on claim of right rather than color of title. In contending the trial court erred in finding she failed in her proof of this element, she attacks the viability of the principal case relied on by the trial court, *Goulding v. Shonquist,* 159 Iowa 647, 141 N.W. 24 (1913). Its facts are analogous to those here.

In *Goulding* the individual also cleared land adjacent to his house. The land was

overrun with brush and willows and was frequented by hunters. After clearing it, the individual used the land as a pasture and garden. In finding he did not establish good faith claim of right, the court said:

> When he moved into his present property, the lands in question were objectionable because they were frequented by hunters, and for that reason he and his wife thought they ought to clear them up. He says he supposed they were part of the old river bed or waste land upon which anyone could enter. No other facts are offered by defendant as a reason for entering into the possession of the land at that time. Whether the title to the land was in the state or some other person, the defendant knew that he had no title and that he had no claim of title, and no right whatever to enter into the possession, and his possession was not in good faith for that reason.

*Id.* at 651, 141 N.W. at 25. The court quoted a statement from *Litchfield v. Sewell*, 97 Iowa 247, 251, 66 N.W. 104, 106 (1896), that "that there can be no such thing as adverse possession where the party knows he has no title, and that, under the law, he can acquire none by his occupation."

Plaintiff argues that it is inconsistent to say ownership can be acquired by claim of right as an alternative to color of title and at the same time say ownership cannot be acquired by a person who knows he does not have title. She also argues that the good faith requirement was eliminated by the court's decision in *I–80 Associates, Inc.* Although we agree it is an overstatement to say ownership cannot be acquired by a person who knows he does not have title, plaintiff is incorrect in her argument that good faith is not an essential component of claim of right. Moreover, we agree with the trial court that plaintiff did not prove this element of her adverse possession claim.

■ The overbreadth of the statement that title cannot be obtained through adverse possession by one who knows he has no title is demonstrated in *Litchfield*, *Goulding* and subsequent decisions. In *Litchfield* the court rejected the adverse possession claim of a person in possession of land under a quitclaim deed from a squatter. In finding an absence of good faith, the court noted the adverse possession doctrine "has no application to one who actually knows that he has no claim, or title, or right to a title." 97 Iowa at 250, 66 N.W. at 106. Under this holding a mere squatter or one who claims under a squatter cannot have a good faith claim of right to the property, but mere knowledge by the person that he has no title is not preclusive. A claim of right by a squatter is a false claim. To permit a squatter to assert a claim of right would put a premium on dishonesty. *See* 4 H. Tiffany, *Real Property* § 1147 at 792 (3d ed. 1975). One of the main purposes of the claim of right requirement is "to bar mere squatters from the benefits of adverse possession." 7 R. Powell, *Real Property* ¶ 1015 (Rohan ed. 1981).

As in *Litchfield*, the possessor in *Goulding* not only knew that he had no title but that he had no claim of title or any right to enter into possession of the property. He was a mere squatter.

■ Knowledge of a defect in title is not alone sufficient to preclude proof of good faith:

> One is not deprived of the benefit of the statute of limitations merely because his claim of right is unenforceable or his title is known to be defective. The doctrine of adverse possession presupposes a defective title. It is not based on, but is hostile to, the true title. If the statute were to run only in favor of a valid title, it would serve no purpose. The holder of such a title has no need to invoke the statute. Where bad faith is held to negative an alleged claim of right, it is only another way of saying that such claim has been disproved.

*Creel v. Hammans*, 234 Iowa 532, 535, 13 N.W.2d 305, 307 (1944).

■ Nevertheless, when knowledge of lack of title is accompanied by knowledge of no basis for claiming an interest in the property, a good faith claim of right cannot be established. For example, a mere ex-

change of quitclaim deeds by persons who know legal title is in another will not support a claim of right:

It is evident the claim and possession of George C. Abel could not have been in good faith. There was no reason why he and his brother should believe they had any right to divide and apportion between themselves the real estate of their father while he was an insane patient in the state hospital. They must be held to have known the quitclaim deeds they exchanged gave them no title. At best, they proceeded upon what proved to be an unfounded assumption that their father would never be discharged from the adjudication of insanity. No claim of ownership by adverse possession will be sustained upon such a foundation. Plaintiff's position at this point does not appeal to a court of equity.

*Abel v. Abel*, 245 Iowa 907, 920, 65 N.W.2d 68, 75 (1954).

 The good faith requirement was not an issue in *I–80 Associates, Inc.* The discussion of claim of right in that case concerned mode of proof and did not include a comprehensive definition of the element. *See* 224 N.W.2d at 11. The requirement of good faith was implicitly reaffirmed in a subsequent case, *Pearson v. City of Guttenberg*, 245 N.W.2d 519, 532 (Iowa 1976). We now confirm that good faith, as explained in this case, is essential to adverse possession under a claim of right.

 We believe plaintiff failed to prove a good faith claim of right in the present case. She knew her lot did not include the cornfield north of it. She knew someone else had title to it and she had no interest in it or claim to it. This is not a case of confusion or mistake. At the time she entered possession of the disputed land, plaintiff knew she had no legal right to do so. To say that one can acquire a claim of right by merely entering possession would recognize squatter's rights. Possession for the statutory period cannot be bootstrapped into a basis for claiming a right to possession.

We hold that the trial court was right in rejecting plaintiff's claim.

 II. *The cross-appeal.* Under Iowa R.App. 5(a), a "cross-appeal may be taken within the thirty days for taking an appeal or in any event within five days after the appeal is taken." Defendants did not take their cross-appeal within the thirty days for taking an appeal. Nor did they take their cross-appeal within five days after plaintiff filed her notice of appeal with the clerk of the district court. They argue, however, that the rule should be interpreted to allow a cross-appeal within five days after receipt of a copy of the notice of appeal. They provided an affidavit to show their cross-appeal was taken within five days after their attorney received a copy of the notice of appeal in the mail.

The rule is not susceptible to the interpretation urged by defendants. The five-day period commences when an appeal is "taken." Under rule 6(a), the appeal is "taken and perfected by filing a notice with the clerk of court where the order, judgment or decree was entered, signed by appellant or his attorney." Therefore the five-day period began on the date the notice of appeal was filed with the clerk, and the cross-appeal was taken too late. Compliance with the time limitations for taking a cross-appeal is mandatory and jurisdictional. *See Hogan v. Chesterman*, 279 N.W.2d 12 (Iowa 1979). Because the cross-appeal was untimely, we did not acquire jurisdiction of it, and it must be dismissed.

AFFIRMED ON THE APPEAL; DISMISSED ON THE CROSS-APPEAL.