Russell L. HUEBNER and Mardel L. Huebner, Plaintiffs-Appellees,

v.

Sylvester KUBERSKI, Defendant-Appellant.

No. 85–78.

Court of Appeals of Iowa.

Jan. 29, 1986.

Richard L. Stevens and John R. Newman of Stevens & Newman, Davenport, for defendant-appellant.

Jack D. Darland of Wells, Brubaker, de Silva, Flynn & Darland, P.C., Davenport, for plaintiffs-appellees.

Considered by OXBERGER, C.J., and SNELL and HAYDEN, JJ.

OXBERGER, Chief Judge.

The petition below was brought by landowners claiming that the defendant was encroaching upon his land. The defendant stated the boundary was such that he was not encroaching on the land, and in the alternative stated title was now in his name through adverse possession for more than ten years. The court denied the claim of adverse possession and ordered a commission be appointed. The defendant has appealed. We affirm in part and reverse in part.

We will first discuss the issue of adverse possession. Plaintiff's exhibit four is attached to this opinion and accurately reflects the location of the claimed encroachment. The plaintiffs, Russell and Mardel Huebner, own the lot to the south, and Sylvester Kuberski owns the lot to the north, formally owned by Mae Brown. As the boundary lines are drawn in exhibit four, a woven wire fence encroaches onto the plaintiff's property by ten and one-half feet. Defendant claims this area, plus the area to the east of the fence and a strip two feet to the south is his through adverse possession. The court summarily denied this claim.

Adverse possession is shown through clear and convincing evidence that the area in question was used by the claimant actually, openly, exclusively, and hostilely to the actual owner under either claim of right or color of title continuously for at least ten years. *Marksbury v. State*, 322 N.W.2d 281, 287 (Iowa 1982). Mae Brown was the prior owner of the property now owned by Kuberski. The area was never surveyed, but her son Howard Brown understood the lot included 20 feet south of

the barn on his mother's tract. When Kuberski bought the land in 1964, he thought a pipe 20 feet south of the barn marked the boundary. The lot to the south was purchased by Charles Condon in 1967. He and Kuberski disagreed as to the extent of the boundary. Condon tilled and seeded the area for some time, and Kuberski also used the area. At times Kuberski mowed the area, other times Condon mowed it. In 1971 Kuberski put up the woven wire fence which is still in existence. Since this time he has planted a garden inside the fence. Kuberski grew strawberries in the garden, and Condon told his children to pick the berries because he felt that the land was his. When the children would climb over the fence to take the berries, Kuberski would shout at them to leave the land. Condon asked surveyor Marvin Hinkle to conduct a survey on the land. It showed that the boundary was south of the fence. Condon disagreed that the land was not his, but took no action, saying that because of the survey he felt he had no legal basis to bring a claim.

In 1974 Condon sold the land to Huebner, telling him about the dispute. Hinkle, meanwhile, had found a surveyor's note attached to the original plat which changed his opinion as to where the boundary was located, and now said it showed it was north of the fence. Huebner sent several letters to Kuberski asking him to remove the fence. This action was brought in 1982 when Kuberski set several stakes further south of the fence.

■ The plaintiff points out that when a person intends to occupy an area only to the true lot line, no occupancy beyond that line is adverse. *Griffin v. Brown,* 167 Iowa 599, 607, 149 N.W. 833, 836 (1914). We agree with plaintiff there is no evidence that Mae Brown ever intended to occupy an area beyond the true lot line. However, the court has held that mistake alone does not defeat the adverse possession. *Carpenter v. Ruperto,* 315 N.W.2d 782, 786 (Iowa 1982). Rather, it is the intent of the party which is important. *Id.* If the person intends to claim up to the lot line alone,

adverse possession is not shown; but if the person has the intent to occupy up to the boundary, regardless of whether it is correct or not, adverse possession may be shown. *Griffin,* at 607, 149 N.W. at 836–37; *Kotze v. Sullivan,* 210 Iowa 600, 603, 231 N.W. 339, 340 (1930); 3 Am.Jur.2d *Adverse Possession,* § 41 (1964). Plaintiff admits this may have been the case when the dispute arose between Kuberski and Condon. A possession may become adverse at a later time. *Simonsen v. Todd,* 261 Iowa 485, 496, 154 N.W.2d 730, 736 (Iowa 1967).

It is plaintiff's position, however, that use was not exclusive. The undisputed facts reflect, however, that from 1971 when the fence was erected, until 1982 when the action was commenced, Kuberski was the only one to use the area enclosed by the fence. The only use by Huebner or Condon is when Condon's children climbed over the fence to take berries, and Kuberski yelled at them. The court in *Marksbury* discussed several of the elements of adverse possession, noting that it must be asked whether the adverse claimant assumed rights in the property not available to the other claimed owner. *Marksbury,* at 287. In that case, use was not exclusive by the private landowners because the public continued to picnic and fish in the area. *Id.* Further, it has been stated "a claimant's possession need not be absolutely exclusive; it need only be of a type of possession which would characterize an owner's use." 2 C.J.S. *Adverse Possession* § 54 (1972). Further, a "mere casual intrusion by others on property occupied by the adverse claimant does not deprive his possession of its exclusive character ..." *Id.* at § 56.

■ The use made by Kuberski of the area within the fence was exclusive for more than ten years. The occasional intrusion by the children did not destroy the exclusive nature of this possession, and Kuberski's use was the type of possession characterizing an owner's use.

These facts are not disputed. Huebner claims that the boundary line of the area

used by Kuberski was changed several times. This occurred before 1971 and in the ten years following the fence was not moved. All joint use of the area within the fence occurred before 1971.

■■■ However, it is also undisputed that the area to the east of the fence and south of the fence was jointly, and not exclusively used. Both parties mowed this area, and in fact on one occasion the police were called after a heated confrontation when Kuberski's wife tried to mow the area and Huebner put a tarp down to prevent her from mowing. The general rule is that, in the absence of color of title, a person holding land adversely may acquire title only to the land actually occupied. *Id.* at § 227. We find that Kuberski attained title to the area enclosed by the fence through adverse possession, but has not attained title to the remaining area. Title to this land must be determined by a decision as to where the boundaries fall.

The second part of this appeal deals with the court's findings regarding the appointment of a commission. The defendant says (1) the trial court erred in determining the boundary line is lost and that a commission should be appointed; (2) the court erred in its indication of the manner in which the boundary line should be located; and (3) should not have rejected information from Kuberski regarding the location of the lines and should not have required each party to nominate a surveyor to the commission.

Defendant's exhibits A and B are attached to this opinion to aid in review of this case. When the original plat was drawn in 1856 by W.P. Campbell, he used the East and West Center section line as the basis for marking the plat. This line is clearly marked on exhibit A and is also reflected in exhibit B. Campbell indicated Block 2 began 30 feet south of this line and parallel to it. Each of these lots is 60 feet, nine inches, except for lots four and five, which run into Hubbard Street. Kuberski owns lot seven, Huebner owns lot six.

The first survey presented at trial was performed by Hinkle, hired by the plaintiff in 1969. Hinkle found that the actual East and West Center section line is not the line that Campbell used in laying out the plat. Hinkle says Campbell was mistaken, and used a line which is 27 feet to the south of the north line of Lost Grove Road. This creates a deficiency. The problem arises of whether to allocate this deficiency equally among the lot or to lots four and five only. Since Campbell indicated what the measurements were for all the lots except for four and five, Hinkle allocated the deficiency to lots four and five only. This results in a boundary line for lot seven which includes the area now in dispute as land belonging to Kuberski. Later, after Huebner has purchased the lot, he found a note appended to Campbell's survey. It indicated that all the lots were to be of equal dimensions. As a result of this, Hinkle allocated the deficiency equally, which placed the land used by Kuberski within the boundaries of Huebner's land.

Another survey was performed by Richard Verberke, also retained by the plaintiff. He too agreed that Campbell erred and that the East and West Center section line is actually north of the line used by Campbell. He concluded that the line Campbell used is the center line of Lost Grove Road. Verberke would also allocate the deficiency equally among the lots because of the surveyor's note. Defendant points out that during cross-examination, Verberke admitted that certain stones uncovered by Kuberski could be the markers originally used by Campbell and could indicate that lot five was intended to be a remnant. Verberke also testified he could not find any stones or monuments which would confirm his own survey.

The defendant hired surveyor Michael Crapnell who performed the surveys reflected in exhibits A and B. He testified that Campbell erred and did not use the actual East and West Center section line in platting the area. Instead, he used a line which is the center of Lost Grove Road. Exhibit A reflects his survey which begins Block Two 30 feet from this line and allocates deficiencies equally. Exhibit B

shows the results of the survey when placing the northern line of Block Two 43.3 feet from the section line, using stone monuments uncovered by Kuberski.

■ We believe the trial court was correct in determining the boundary line is lost. In such a situation the court is entitled to appoint a commission which would determine the location of the lost boundary. Iowa Code § 650.7 (1985). The defendant argues that all of the surveyors agree that Campbell used a starting line which is not the actual East and West section line. The evidence confirms this statement. However, defendant also says that all the surveyors agree that the center line of Lost Grove Road is the line which Campbell used. Hinkle testified the line is not the center of Lost Grove Road. Therefore, defendant is incorrect in claiming that it is undisputed where the line is located. We agree this line is lost, as are the boundary lines which result from starting at this line, and find support for the court's appointment of a commission.

■ We do not agree with the trial court however that the commission should be instructed to find the actual East and West center section line instead of the line Campbell used. The court rejected the statements of all surveyors involved that Campbell was mistaken in saying the line he used was the East and West line. The court instead found that it was the actual East and West line Campbell used and ordered the commission to locate and use this line. There is no support in the record for this conclusion and we find the court's instruction in this regard is not supported by any evidence. Instead, the commission should be instructed to locate the line used by Campbell in setting out the plat, whether it is the center of Lost Grove Road, or at some other point.

■ The plaintiff indicates that if the commission cannot find the line used by Campbell, then it should be instructed to survey the area using the actual East and West line. All three surveyors who testified indicated Campbell misallocated and did not use the East and West line, but they had no trouble establishing what line *was* used by Campbell. We find such an additional instruction would be unnecessary.

■ The defendant says the court went beyond the purposes of Chapter 650 of the Code in instructing the commission to ignore the stones uncovered by Kuberski as evidence of how any deficiency might be allocated. Crapnell testified the stones are of the type which might have been used by Campbell when the original plat was made. The stones were similar to those found in the area and were placed vertically in the ground, which Crapnell said was the method for placing such monuments at that time. Verberke disagreed, saying a surveyor would use stones that were made of different material from those typically found in the area.

We find merit in defendant's argument that the order of the court defeats the purpose of appointing a commission. The sole purpose of a commission so appointed is to ascertain the facts. *Smith v. Scoles*, 65 Iowa 733, 736, 23 N.W. 146, 147 (1885). There is no ground for appointing a commission where the facts are conceded. *Id.* It is the duty of the commissioner to determine the boundaries using all the information available, accepting or rejecting such information as is necessary to find facts.

■ We also agree with defendant that the parties should not each nominate a surveyor to act as commissioner. The pertinent section of the Code requires appointment of "one or more disinterested surveyors." Iowa Code § 650.7 (1985). It has been held that a person who has previously surveyed the premises for one of the parties is not a disinterested person. *Kraft v. Tenningkeit*, 204 Iowa 15, 17, 214 N.W. 562, 563 (1927). As defendant points out, plaintiff has nominated Verberke to serve on the commission. The court should make an appointment of one or more surveyors from persons who are not connected to the controversy.

Therefore, we find that the defendant has established adverse possession to that portion of the area in dispute that is enclosed within the woven wire fence. The remaining areas in dispute have not been acquired by the defendant through adverse possession. We find the boundary lines are lost, and affirm the order of the court appointing a commission. We reverse the court's instruction that the commission should use the actual East and West center section line, and instead hold the commission shall find the line used by Campbell in originally platting the land. We also reverse the instructions that the information regarding finding of stone monuments should be disregarded by the commission, and that the parties shall nominate surveyors to the commission. Instead, the court shall appoint a commission of disinterested surveyors.

AFFIRMED IN PART; REVERSED IN PART.

APPENDIX

OF ADDITION OF ATHERTON'S ESTATE TO THE
ELIZABETH CITY
(NOW PRINCETON, IOWA)

PREPARED FOR
RUSSELL L. & MARDEL E. HUEBNER
PRINCETON, IOWA

PLAINTIFF'S
EXHIBIT
4

MAE
BROWN

ELVA
SMITH

FILED
OCT 12 1984

ROBERT J. TANK
TRUSTEE FOR
FRANCIS LEO DOYLE

DONALD & DONNA
DUDLEY

GARAGE

40'

10.65'

70.17'

90°32'55"

89°28'40"

WOVEN WIRE
FENCE

115.25'

115.25'

89°28'40"

90°29'45"

70.23'

25'

THIRD STREET

HUBBARD STREET

LEGEND

FOUND 5/8"⌀ IRON PIN

SET 5/8"⌀ IRON PIN W/
SURVEYOR CAP

5080

I hereby declare that this plat, map, survey or report was
made by me or under my direct personal supervision and
that I am a duly registered Land Surveyor under the laws
of the State of
Signed

Date
7-6 1982

RICHARD A. VERBEKE, L.S.    Reg. No. 5080

PREPARED BY
VERBEKE-MEYER
CONSULTING ENGINEERS, P.C.
DAVENPORT, IOWA

VMCF 82159

EXHIBIT   A

I hereby certify that this
plat and survey was prepared
by me or under my direct
personal supervision, and that
I am a duly Registered Land
Surveyor under the laws of the
State of Iowa.

Michael D. Crapnell

Date: 6/5/'84 Rec. No.10135

## EXHIBIT B

