# IN THE COURT OF APPEALS OF IOWA

No. 15-1963
Filed December 21, 2016

**JOHN MARKLEY GRAHAM and NANCY GRAHAM,**
        Plaintiffs-Appellants,

**vs.**

**JERRY D. MYERS and KIM M. MYERS,**
        Defendants-Appellees.
_____

        Appeal from the Iowa District Court for Mahaska County, Daniel P. Wilson,

Judge.


        John and Nancy Graham appeal the district court's order quieting title in

Jerry and Kim Myers to a strip of disputed land between the parties' properties.

**REVERSED AND REMANDED.**



        Nicholas T. Maxwell of Harrison, Moreland, Webber & Simplot, P.C.,

Ottumwa, for appellants.

        Jeffrey A. Smith of Smith Law Firm, Oskaloosa, for appellees.


        Considered by Vogel, P.J., and Vaitheswaran and McDonald, JJ.

**VAITHESWARAN, Judge.**

We must decide whether the district court acted equitably in concluding a strip of land was acquired by property owners through adverse possession and acquiescence.

## I.     *Background Facts and Proceedings*

Jerry and Kim Myers owned a piece of property in Oskaloosa on which they had been living since late 1980.  Situated between their driveway and the crop line of the adjacent property owner was a grassy strip of land.  At all times, the adjacent property owners possessed title to the grassy strip.

When the Myers moved in, the grassy strip was being maintained with a tractor mower for "weed control" purposes.  Though the Myers knew the strip was not theirs, they began mowing it with their lawnmower and essentially maintaining it as part of their lawn.  Over the years, they removed a tree, "mowed off the weeds," "tilled" the area, added dirt, planted grass seed, installed landscaping stone, planted flowers, and constructed a building that overlapped the strip.  According to Jerry Myers, "We did whatever it took to keep it kept up, looking nice."

John and Nancy Graham purchased the adjacent property in 1996.  They believed the Myers were encroaching on their land and, in 1999, they had a survey completed "[t]o establish the boundary line."  The survey confirmed their ownership of the grassy strip.  The surveyor demarcated the boundary with flags and, later, with posts.  The surveyed boundary line matched a boundary line marked by remnants of a fence.  According to an individual who farmed the property, the old fence was "[p]retty much right where the survey posts are now."

The Grahams placed their land in the conservation reserve program. Under the program, they were not allowed to mow the property "during primary nesting season." The Grahams repeatedly asked the Myers to discontinue mowing the grassy strip, without success.

In 2013, the Myers sent the Grahams a letter asking why their beautification efforts had "become such an issue." The Grahams responded with a written request to "cease-and-desist from coming on or maintaining real estate" owned by them. They included copies of their real estate deed and survey. Shortly thereafter, they filed a petition for declaratory judgment alleging the Myers had "no right, title, or interest in this real estate" and requesting injunctive relief as well as the costs of removing the items placed upon the grassy strip. The Myers filed an answer and counterclaim, seeking to have title to the strip quieted in their names under the doctrines of adverse possession and acquiescence.

Following trial, the district court concluded the Myers (1) acquired the disputed property by adverse possession and (2) established a boundary by acquiescence. The Grahams filed a motion to enlarge and amend pursuant to Iowa Rule of Civil Procedure 1.904(2). The district court corrected the legal description as requested but denied the motion to enlarge.

The Grahams appealed. Our review is de novo. Iowa R. App. P. 6.907; *Sille v. Shaffer*, 297 N.W.2d 379, 381 (Iowa 1980).

## II.    Analysis

### A.    Adverse Possession

The Grahams challenge the district court's conclusion that the Myers established ownership of the property by adverse possession. "A party claiming title by adverse possession must establish hostile, actual, open, exclusive and continuous possession, under claim of right or color of title for at least ten years." *C.H. Moore Tr. Estate v. City of Storm Lake*, 423 N.W.2d 13, 15 (Iowa 1988). Our focus is on the "claim of right" element.

A person seeking title to property under a claim of right must assert the claim in good faith. *Carpenter v. Ruperto*, 315 N.W.2d 782, 786 (Iowa 1982) (noting "good faith . . . is essential to adverse possession under a claim of right"). In *Carpenter*, the Iowa Supreme Court concluded the plaintiff failed to satisfy this standard. *Id.* at 785-86. She and her husband "cleared several feet of the property to the north, graded it," "planted grass seed" and "peony bushes," and "used the land as an extension of [their] yard." *Id.* at 784. They also "installed a propane tank," "constructed a dirt bank," and built a driveway that infringed upon the land. *Id.* In finding an absence of good faith, the court reasoned as follows:

> [The plaintiff] knew her lot did not include the cornfield north of it. She knew someone else had title to it and she had no interest in it or claim to it. This is not a case of confusion or mistake. At the time she entered possession of the disputed land, plaintiff knew she had no legal right to do so. To say that one can acquire a claim of right by merely entering possession would recognize squatter's rights. Possession for the statutory period cannot be bootstrapped into a basis for claiming a right to possession.

*Id.* at 786.

This case is virtually indistinguishable from *Carpenter.* The Myers used the grassy strip as if it was their own even though they knew it was not. Jerry Myers' testimony is instructive:

> Q. So you started mowing that property in 1981? A. Yes.
> Q. And you knew it wasn't yours in 1981? A. Yes.
> Q. And you took care of it as if it was your own even though you knew it wasn't yours; correct? A. Yes.
> Q. And this whole time from 1981 clear up to 2006 and up to today, you knew this was not your property; correct? A. Yes.

On our de novo review, we conclude the Myers' claim of right to the grassy strip was not made in good faith. *See Goulding v. Shonquist*, 141 N.W. 24, 25 (Iowa 1913) ("[T]he defendant knew that he had no title and that he had no claim of title, and no right whatever to enter into the possession, and his possession was not in good faith for that reason."); *Clymer v. Shawd*, No. 06-1155, 2007 WL 2963957, at *3 (Iowa Ct. App. Oct. 12, 2007) (agreeing with the district court that the plaintiff "failed to establish the required good faith claim of right"). Accordingly, the Myers failed to establish a right to the grassy strip by adverse possession. We reverse the district court's decision to quiet title to the grassy strip in the Myers based on adverse possession.

### B.     Boundary by Acquiescence

The Grahams also challenge the district court's conclusion that the Myers established a boundary by acquiescence. The doctrine of boundaries by acquiescence states, "If it is found that the boundaries and corners alleged to have been recognized and acquiesced in for ten years have been so recognized and acquiesced in, such recognized boundaries and corners shall be permanently established." Iowa Code § 650.14 (2013).

The meaning of "acquiescence" under section 650.14 is well settled. It is the mutual recognition by two adjoining landowners for ten years or more that a line, definitely marked by fence or in some manner, is the dividing line between them. Acquiescence exists when both parties acknowledge and treat the line as the boundary. When the acquiescence persists for ten years the line becomes the true boundary even though a survey may show otherwise and even though neither party intended to claim more than called for by his deed.

*Sille*, 297 N.W.2d at 381.

There was scant, if any, evidence that the Myers and Grahams mutually recognized a different boundary than the legal boundary demarcated by the fence remnants and the survey posts. To the contrary, Jerry Myers stated no agreement to a different boundary was ever reached:

Q. It would be accurate, would it not, Mr. Myers, that the Grahams have never agreed for you to be the owner of that property? A. No.
Q. And they have never agreed to a boundary line different than what the survey line is? A. Correct.
Q. And no prior owner ever agreed that the boundary line should be any different than what is now surveyed? A. Correct.

The Myers nonetheless argue the Grahams "allowed" them to use and maintain the grassy strip. Assuming the truth of this assertion, acquiescence through use is insufficient to establish acquiescence in a different boundary. *See Croell Redi-Mix, Inc. v. Baltes*, No. 08-0379, 2009 WL 778760, at *5 (Iowa Ct. App. Mar. 26, 2009).

On our de novo review, we conclude the Myers failed to prove that the Grahams acquiesced in a boundary other than the legal boundary. We reverse the district court's decision quieting title to the grassy area in the Myers based on acquiescence.

### III. *Disposition*

We reverse the district court's decision and remand for entry of an order quieting title to the grassy strip[1] in the Grahams.

**REVERSED AND REMANDED.**

---

[1] The area is legally described as:

Commencing at the Northwest corner of the Southeast Quarter of the Southwest Quarter of Section 3, Township 74 North, Range 16 West, of the 5th p.m., Mahaska County, Iowa, thence East 31 feet, thence South 250 feet, thence West 31 feet, thence North 250 feet, to the point of beginning.