**IN THE COURT OF APPEALS OF IOWA**

No. 24-1490
Filed November 13, 2025

**LINUS F. VOVES and LINDA K. VOVES,**
    Plaintiffs-Appellees,

**vs.**

**TYLER HANSEN and NOELLE HANSEN,**
    Defendants-Appellants.
_____

Appeal from the Iowa District Court for Chickasaw County, John Bauercamper, Judge.

Property owners appeal a district court decree finding that their neighbors proved their claim of adverse possession. **AFFIRMED AS MODIFIED.**

Jeremy L. Thompson of Putnam, Thompson & Casper, P.L.L.C., Decorah, for appellants.

Siobhan Briley of Pugh Hagan Prahm PLC, Coralville, and Ray Rinkol of Miller Law Office, P.L.C., Decorah, for appellees.

Considered without oral argument by Tabor, C.J., and Greer and Buller, JJ.

**TABOR, Chief Judge.**

Tyler and Noelle Hansen own residential property that borders farmland held by Linus and Linda Voves. The couples dispute who owns a small parcel of land—2/10 of an acre—along a railroad right-of-way. Because the Voveses acquired the disputed parcel by adverse possession, we affirm the district court.

## I. Facts and Prior Proceedings

In the early 1970s, Willis and Patricia Hansen bought land bordering a railroad right-of-way in Chickasaw County. The parcel is identified in this photo as

"2050 Woodland." Most of their land was south of the railroad tracks, but the purchase also included a small triangle on the north side.[1] That parcel is the subject of this suit. Willis and Patricia[2] subdivided the large parcel and created a residential development plat called Woodland Estates. They did not plat the disputed triangle, nor develop it by inclusion in Woodland Estates.



They lived on lot one of the Woodland Estates until 2014. In August 2015, Willis

---

[1] This aerial photo was a trial exhibit. The yellow lines were part of the original exhibit. We added the white text boxes and arrow to identify key parcels.

[2] For clarity, we will refer to Willis and Patricia by their first names and Tyler and Noelle as the Hansens.

and Patricia conveyed that lot to their grandson, Tyler, and his wife, Noelle. The disputed parcel was not included in this conveyance. When the Hansens discovered that omission, Willis and Patricia executed a warranty deed and conveyed title to Tyler in September 2018.

Meanwhile, in July 1978, Linus and Linda Voves[3] entered an installment contract to buy nineteen acres across the railroad right-of-way from the parcel owned by Willis and Patricia. The Voveses believed that their purchase included the 2/10 acre of land at issue. To that end, Linus testified he was unaware that any property in the purchase was disputed.[4]

And their farming decisions reflected that belief. For example, the Voveses hired Merle O'Byrne to plant crops on their property, including the triangle now disputed. O'Byrne had also farmed the land under a rental agreement with the former owner. In 1983, the Voveses rented the land, including the disputed parcel, to Don Utley. Then five years later, Linus enrolled those nineteen acres in a ten-year contract with the Conservation Reserve Program (CRP).

In 1993, Patricia Hansen delivered a handwritten note and map to Linda. The map designated the disputed parcel as belonging to the Hansens and the note asked for a phone call. After that delivery, the Voveses consulted a lawyer. But they testified that Patricia and Willis never followed up, so "nothing came of that" exchange. And the Voveses continued to farm the land. The Voveses testified

---

[3] We will refer to Linus and Linda collectively as the Voveses.
[4] The Voveses also owned land on the south side of the railroad right-of-way bordering the Hansen parcel.

they had no further communication from the Hansens until 2016. That September, Willis sent them a quitclaim deed along with this letter of explanation:

> I am enclosing a quit claim deed for a parcel of land that is on the North Side of Tracks from the property that I owned at one time.
> I have paid the taxes that are past due.
> If you do not want the title to this property you may just destroy the deed.
> To clean up property lines I would suggest that you do the same for the real estate that is on the south side of the tracks.

Rather than destroying or recording the deed, Linus again sought legal advice. The attorney recommended posting no-trespassing signs. The Voveses did so but did not place any signs along the railroad tracks dividing the properties. When nothing more happened, Willis and Patricia executed the deed, conveying title to their grandson and his wife. In March 2019, the Hansens informed the Voveses they were "no longer allowed to use" the disputed parcel. Yet the Voveses continued to farm that land. In response, Tyler or Tyler's father, Dennis, planted an orange stake at the upper corner of the disputed parcel.[5]

Those heightened tensions between the property owners led to years of legal wrangling. The battle started in May 2019, when the Voveses sought to quiet title in their names. Their petition advanced theories of adverse possession and boundary by acquiescence.[6] The district court granted their motion for summary judgment on the boundary-by-acquiescence claim. But on appeal, our court reversed, finding the record did not support either theory as a matter of law.

---

[5] Linus testified that Tyler planted the stake, but Dennis testified that he did so.

[6] Those doctrines are "by no means the same" as the two actions have different objectives. *See Vaudt v. Wells Fargo Bank, N.A.*, 4 N.W.3d 45, 49 (Iowa 2024). An adverse-possession claim establishes ownership in property, while boundary by acquiescence establishes corners and lines, not title or right to possession. *Id.*

*Voves v. Hansen*, No. 20-1251, 2021 WL 3392816, at *2−3 (Iowa Ct. App. Aug. 4, 2021).

On remand, the parties tried the matter to the district court, which decided the Voveses failed to prove either claim. In the second appeal, we reversed and remanded for a new trial because the district court "cited and made express credibility findings based on an affidavit that was never admitted into evidence." *Voves v. Hansen*, No. 22-1651, 2023 WL 7391716, at *1−3 (Iowa Ct. App. Nov. 8, 2023) (finding the court's consideration of Dennis Hansen's affidavit was not harmless error).

So the parties appeared for a second bench trial in June 2024. This time, the district court ruled for the Voveses, finding that they established their claim for adverse possession and declaring the railroad right-of-way to be the true boundary between the litigants' properties. The Hansens now appeal.

## II. Scope and Standard of Review

A quiet-title proceeding is an action in equity; thus, we review de novo. *Larman v. State*, 552 N.W.2d 158, 161 (Iowa 1996). We give weight to the district court's factual findings, especially when considering witness credibility, but we are not bound by them. *Hutchins v. Hutchins*, No. 12-1966, 2014 WL 1234164, at *2 (Iowa Ct. App. Mar. 26, 2014).

## III. Analysis

The Hansens raise two claims. First, they argue the district court erred in finding the Voveses established their claim for adverse possession. Second, they contend the court erred in declaring the railroad right-of-way as the true boundary between the litigants' properties. We will consider each issue in turn.

## A. Did the Voveses establish their claim for adverse possession?

We begin with the relevant law. "A party claiming title by adverse possession must establish hostile, actual, open, exclusive and continuous possession, under claim of right or color of title for at least ten years." *C.H. Moore Tr. Est. v. City of Storm Lake*, 423 N.W.2d 13, 15 (Iowa 1988). The claimant must offer "clear and positive" proof of all elements. *Id.* (citation omitted). On the last element, the claimant may show either color of title or claim of right but need not prove both. *Id.* Claimants need not rest their claim of right on a written document; instead, they can offer evidence that they took and maintained the property—as an owner of such property would—to the exclusion of the true owner. *I-80 Assocs., Inc. v. Chi., Rock Island & Pac. R.R.*, 224 N.W.2d 8, 11 (Iowa 1974). Evidence may include "receiving the rents, issues, and profits of the property, or. . . conveying, devising, leasing, encumbering, or improving it." *Id.*

One more layer. When claiming title by adverse possession under claim of right, the claimant must act in good faith. *Carpenter v. Ruperto*, 315 N.W.2d 782, 785 (Iowa 1982). Knowledge of a defect in title is insufficient alone to show an absence of good faith. *Id.* But claimants cannot show a good faith claim of right if they also know they have no basis for claiming an interest in the property. *Id.* A primary purpose of this claim-of-right requirement is to prevent "squatters" from taking advantage of adverse possession.[7] *Id.*

In challenging the adverse-possession finding, the Hansens point to two alleged flaws in the district court's reasoning. One, they argue the district court

---

[7] "A squatter is one who settles on the lands of another without any legal authority. . . ." *Williams v. Alt*, 123 N.E. 499, 501 (N.Y. 1919).

failed to consider the Voveses did not act in good faith. Two, they contest the court's finding that the Voveses' possession was hostile and exclusive. Neither argument is convincing.

*The good-faith challenge*. The Hansens emphasize that the Voveses never paid taxes on the disputed property, even after Willis offered them the deed to that 2/10-acre parcel. And the Hansens note that when asked about the taxes at trial, Linus admitted: "I didn't know that I owned the property for a long time." Beyond the taxes, the Hansens believe that the Voveses' consultation with lawyers about the land dispute reveals a lack of good faith.

In our de novo review, we find the record supports a finding that the Voveses had a good faith claim of right to the disputed parcel. As a start, the tax issue is not dispositive. *I-80 Assocs.*, 224 N.W.2d at 10 ("[P]ayment of taxes is not essential to the acquisition of title by adverse possession."). And the Hansens' quote from Linus's testimony is too truncated to prove their point. In the preceding sentence Linus testified: "I physically didn't know I had taxes on there." That statement reflects his belief that the disputed parcel was included in the overall nineteen-acre land purchase, and he was unaware of the additional taxes owed.

Indeed, the record shows the Voveses bought their nineteen acres with no indication that it included any land subject to dispute. And supporting their claim of right, the Voveses used the whole parcel as any landowners would: they first rented it to other farmers and then enrolled it in the CRP, reaping returns. True, the Hansens contest whether the Voveses improved the dispute property by having it tiled for better drainage. But the record shows that the Voveses asked the installer to tile "whatever he felt was low ground," evincing their intent to

improve the disputed property if it needed to be tiled. The record supports a finding that the Voveses believed in good faith that they owned the disputed parcel. They did not seek legal counsel until after they received the letter from the Hansens in 1993—after ten years had passed.

*Hostile and exclusive possession*. The Hansens insist that the Voveses "mere use" of the disputed parcel is insufficient to establish hostility. *Johnson v. Kaster*, 637 N.W.2d 174, 178–79 (Iowa 2001). And the Hansens contend that the Voveses did nothing to exclude the true owners.

But possession of property is hostile if the claimants exert the type of control that owners usually exercise in managing similar property. *S. Cent. Iowa Landfill Agency v. Corwin*, No. 23-1232, 2024 WL 4758283, at *6 (Iowa Ct. App. Nov. 13, 2024). What activity satisfies these elements depends on the nature of the property. *Id.* As for exclusivity, "a claimant's possession need not be absolutely exclusive; it need only be of a type of possession which would characterize an owner's use." *Huebner v. Kuberski*, 387 N.W.2d 144, 146 (Iowa Ct. App. 1986) (citation omitted).

As discussed above, the Voveses used the disputed property as an owner of farmland would, and they intended to improve the land by tiling it if it needed that drainage. Still, the Hansens allege the Voveses never excluded them from the property, pointing to the fact that they did not post no-trespassing signs at the railroad right-of-way. But that fact carries little weight because there was no entrance on that side of the disputed parcel. Overall, the record supports the district court's finding that the Voveses established their claim of adverse possession for the 2/10-acre parcel.

**B. Did the district court err in declaring the railroad right-of-way was the true boundary between the litigants' properties?**

In their brief, the Hansens note that the district court "considered the alternate claim of boundary by acquiescence but did not make specific findings as to whether the Voveses had established that claim." Instead, the court declared an existing railroad right-of-way to be the true boundary between the land owned by each of the parties.

We agree that the district court's ruling is unclear on the boundary-by-acquiescence claim. The court recited the law on both boundary by acquiescence and adverse possession. But after deciding for the Voveses on their adverse possession claim, the district court did not return to the boundary-by-acquiescence theory except to say that it "retain[ed] jurisdiction of this case to make appropriate orders under Iowa Code sections 650.7 or 650.17 to obtain a legal description of the disputed parcel to be platted and filed of record."

While the court could have been more precise, it was not wrong to stop after the finding of adverse possession. Because a successful adverse possession claimant "establishes ownership" and takes title, there was no need to proceed on a boundary by acquiescence claim which merely "establish[es] corners and lines" without affecting title or right of the claimants. *See Vaudt*, 4 N.W.3d at 49. And because the court did not rule on the boundary-by-acquiescence claim, we will not consider that alternative ground for relief.

When the court declared "the existing railroad right-of-way is the true boundary between the adjoining land now owned by the plaintiffs Linus F. and Linda K. Voves and the defendants Tyler and Noelle Hansen," it was resolving the

adverse possession question. It was not making a separate finding of boundary by acquiescence. We find no error in the court's boundary determination.[8]

A final note. As the Hansens explain, Iowa Code chapter 650 (2019) governs how boundaries are to be established. *See Sundance Land Co. v. Remmark*, 8 N.W.3d 145, 150 (Iowa 2024) ("Iowa Code chapter 650 codifies the doctrine of boundary by acquiescence in our state."). That chapter does not apply to adverse possession. Rather, "[a]dverse possession is established by a quiet title action, an equitable proceeding under chapter 649." *Sille v. Shaffer*, 297 N.W.2d 379, 380 (Iowa 1980). Thus, the district court's reliance on sections 650.7 and 650.17 to obtain a boundary survey is misplaced.[9] We modify the decree to delete the references to chapter 650. *See Merten v. Eggers*, No. 08-1110, 2009 WL 2952064, at *4 (Iowa Ct. App. Sept. 2, 2009) (modifying decree to clarify limits of easement). The decree should instead order that the boundaries of the plots owned by the Voveses and the Hansens be redrawn to reflect the adverse possession findings.

**AFFIRMED AS MODIFIED.**

---

[8] Because we do not reach the merits of the boundary by acquiescence claim, we do not consider the Hansens' argument that the railroad right-of-way was "only a partial boundary."

[9] Section 650.7 provides for the commission of a professional land surveyor to locate lost, destroyed, or disputed corners and boundaries. And section 650.17 permits parties to agree in writing to a lost or disputed corner or boundary. Because the court found adverse possession, neither section applies.